[S. F. No. 87.     Department Two.—July 16, 1896.]

DANIEL HARNEY, RESPONDENT, v. JOHN BENSON, APPELLANT.

STREET IMPROVEMENTS — CONSTRUCTION OF SEWER — LACK OF OUTLET — JURISDICTION OF MUNICIPAL BOARD — ENFORCEMENT OF ASSESSMENT —FAILURE TO PROTEST.—It is the duty of a municipal board to provide means of disposing of the sewage of the city, and it is their province to determine whether sewers are needed, and what districts will be benefited thereby; and, if there can be no outlet provided into the ocean or some other permissible place, the board must dispose of it in some other mode, and may gather it for that purpose; and their determination as to the necessity of the construction of a sewer, and what district will be benefited by it, cannot be assailed in an action to enforce an assessment therefor, on the ground that no outlet was provided for the sewage, where no protest was made against the work on that ground before the board.

ID.—ASSESSMENT IN PROPORTION TO BENEFITS — PRESUMPTION— METHOD OF CALCULATION.—An assessment for a sewer will be presumed to have been made in proportion to benefits, and the superintendent of streets will be presumed to have done his duty in distributing the burden as the statute requires, unless the assessment shows the contrary; and it is not necessary that the assessment should disclose his method of calculation; but, if the estimate of benefits appears to be rational, it is not for the court to determine whether it is the best.

ID.—CONCLUSIVENESS OF ASSESSMENT—APPEAL TO BOARD.—If the method of assessment adopted by the superintendent of streets in distributing the burden is wrong, the property owner must appeal to the board; and, in the absence of such appeal, the assessments made by him are conclusive, unless the board is wholly without jurisdiction, or the procedure has been departed from in some other manner.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. WALTER H. LEVY, Judge.

The facts are stated in the opinion of the court.

*Edward J. Pringle,* for Appellant.

The clear intention of the statute is to adopt, where there is a district, the assessment for benefits by area, and not the uniform assessment per front foot. It is the legislative discretion which is to choose which system of assessment is to be used, not the superintendent's. (*Emery* v. *San Francisco Gas Co.,* 28 Cal. 372; *Whiting* v. *Quackenbush,* 54 Cal. 306; *Rich* v. *Chicago,* 152 Ill. 18.) The structure was but part of a sewer, the outlet being wanting; and it being impossible of construction, the board could not charge it against the property. (*Fletcher* v. *Prather,* 102 Cal. 415.)

*D. H. Whittemore,* for Respondent.

In a district where the lands are in blocks, wholly vacant and unimproved, of a uniform size, the front foot plan is the fairest way to assess (*Emery* v. *San Francisco, Gas Co.,* 28 Cal. 372); and the assessor may assess lots fronting on the work per front foot and other lots on another uniform rate. (*Denise* v. *Fairport,* 32 N. Y. Supp. 97; Cooley on Taxation, c. 20.) He is not required to say that he made the assessment according to the benefits. (*Appeal of North Beach etc. R. R. Co.,* 32 Cal. 521, 522; *Piper's Appeal,* 32 Cal. 547.) It is too late for defendant to object to the legality of the assessment, as on an appeal to the board the assessment could have been corrected in amount or form, at will. (*Diggins* v. *Hartshorne,* 108 Cal. 154; *Dowling* v. *Conniff,* 103 Cal. 75; *McSherry* v. *Wood,* 102 Cal. 647.) The power to determine where a sewer shall be built rests with the board. (*Cochran* v. *Park Ridge,* 138 Ill. 295; *Rich* v. *Chicago,* 152 Ill. 18; *Dougherty* v. *Foley,* 32 Cal. 402.) It is not at all material whether other contracts were awarded or not, or whether there was an outlet sewer which, when done, would give an outlet. (*Fletcher* v. *Prather,* 102 Cal. 415; *Rich* v. *Chicago, supra.*)

Temple, J.—This is a street assessment case, and the appeal is from the judgment, and was taken within sixty days after its rendition.

The charge is for the construction of a trunk or main sewer on Fourteenth avenue. In the resolution of intention it was declared that the work was of more than local or ordinary benefit, and the expense was made a charge upon a district which was defined by and in the resolution.

On October 20, 1890, the board had adopted plans for the sewerage of that locality, and had made a map of a system of sewers, of which the sewer in question constituted a part. The scheme contemplated a drain to the Pacific ocean through the Presidio, and it was found, and is admitted, that the board had no power to lay out streets or to construct sewers through the Presidio reservation.

The resolution of intention was passed November 19, 1890, and the work ordered constitutes but a small part of the system which had been adopted. The portion let had no outlet, and the plan, of which it is a part, cannot be completed. By that method the city cannot furnish an outlet. It was open to the board, however, to adopt other plans, and, at the time of the trial, it was shown that the plans had been changed and contracts actually let, which, when completed, would furnish an outlet for this sewer.

In the specifications and contract it was provided that connections should not be made with the sewer until there was an outlet. The sewer was still unused at the time of the trial, some four years after the completion of the work.

It is charged that the supervisors well knew that the work would be of no value to the property in the district, and that there was fraudulent collusion between the board and the contractor. The court found, however, against all charges of fraud, and against the claim that the work had not been done according to contract.

It is contended that since the structure has no outlet, and since, as counsel claim, it is legally impossible —or was so impossible at the time the work was done— to procure an outfall, it is not a drain, and cannot be

made one, and therefore is not a sewer, and the board had not the power to contract for its construction.

It may be very unwise, and even reckless, on the part of the board to order work done under such circumstances, but, conceding it to be so, I cannot see how that would affect their power. It is their duty to provide the means of disposing of the sewage. If there can be no outlet provided into the ocean, or some other permissible place, the board must dispose of it in some other mode, and may gather it for that purpose. It is their province to determine whether sewers are needed, and what districts will be benefited thereby. Upon these points their judgment is ordinarily final. And there may have been, in the judgment of the board, other reasons why this sewer should be thus constructed, although it would not be at once utilized. The cases cited from New Jersey (*State* v. *Elizabeth*, 37 N. J. L. 330, 335; 40 N. J. L. 276), do not seem to me to hold that this cannot be done. In that state the law was different. The city constructed the street and paid for it, and then reimbursed itself by an assessment upon the property benefited. It was held that under the law this could not be done until the streets could be used.

Besides, the property owners should have protested against the work on that ground, if their complaints are well founded. As we have seen, the work was within the general power of the board, though to construct this sewer may have been an improvident use of the power.

Possibly if, as matter of law, we could see that the structure could not be useful, the conclusion of the board would not prevent the courts from giving relief. But the aggrieved owner should exhaust the special remedies provided before he applies to the court. The board could have afforded him all the relief he required. If he had protested in time, the contractor might not have expended his money and labor in the improvement of the property. Since the law provided that he should object, and he did not, he should not now be heard, unless there was a total absence of power in the board to

do the work, or the procedure has been materially departed from. A property owner should not thus sit by and see his property improved and expect to escape the expense.

Defendant also objects to the assessment, and claims that his property is twice assessed, or that the assessment is on two inconsistent theories. The assessment is entered in the following form:

| No. | Direct Frontage | Names of Owners. | Beneficiary Frontage. | By Whom Paid. | Amt. for Direct Frontage | Amount for Beneficiary Frontage. | Total. |
|-----|-----------------|------------------|----------------------|---------------|--------------------------|----------------------------------|--------|
| 685 | 240 | Block 193 Unknown | 1680 | | $641.82 | $235.20 | $877.02 |

The method is described in finding XLV: "That on the seventeenth day of August, 1891, the said superintendent of streets estimated upon the lot and lands within said district the benefits arising from said work and received by said lots or portions of land, and thereupon assessed the same upon said lots, to wit, in the sum of forty-nine thousand two hundred and ninety-three dollars, in proportion and according to the estimated benefits received by each lot. That in so doing he did assess said sum of forty-nine thousand two hundred and ninety-three dollars in different amounts upon the lots fronting upon the streets in which said sewer was constructed, and upon the lots within said district fronting upon streets other than those in which said sewer was constructed; and, in assessing said lots, assessed the same at different rates per front foot, deeming the lots benefited to the amounts so assessed. That said proposed assessment showed the direct frontage of said lots of the defendant upon the line of said sewers, and the rate per front foot of all of the lots fronting on the line of said sewers, and a beneficiary rate of assessment for each foot fronting within said district, and the total sum so assessed on each lot, and the amount of the direct and beneficial frontage assessments, and that such assessment is not invalid or void. That such assess-

ment was made upon the lots described in the complaint as therein alleged."

The averments in the complaint referred to in the finding follow the statute and show the performance of all the acts required in making an assessment for benefits. The statute required the superintendent to estimate the benefits to each parcel of land, and then to assess upon the lots the entire expense in proportion to benefits. The judgment of the superintendent is called into action only in making the estimate of benefits. If he first made a tabulated statement of his estimates, the assessment would be a mere mathematical calculation.

But if the burden has in fact been distributed as the statute requires, the particular process by which the calculation was made is not material. It was not necessary that the superintendent should show his method. The presumption is, that he has done his duty, and, if the assessment does not show that he has not followed the law, it is sufficient.

Does the assessment, then, show that the burden was not distributed as the law requires? That this may have been done, and that the assessment does not show the contrary, I think conclusively appears. The superintendent concluded that the different parcels of land would all be benefited in proportion to frontage by a main sewer. The district was in an unsettled part of the city. It does not appear that any lots had been improved, or that any holdings were otherwise than entire blocks. It does not appear that any holding had much frontage and small area, or the reverse. The superintendent had diagrams showing each parcel, and made his estimate upon the land. If there had been irregular lots, he probably would have made a different estimate of benefits. Now, the facts being as suggested —as, if necessary, we must suppose—the estimate seems a very fair one. At all events, it is a rational one— and it is not for us to say whether it is the best. If the superintendent so thought, the method does show what

in his opinion, was the relative benefit to each lot from the construction of a main sewer.

But some of the lots fronted upon the avenue upon which the sewer was constructed. The superintendent thought these received a special benefit, from the fact that they were thereby saved the expense of connecting sewers, whereas, on the other streets, branch or lateral sewers would be required. He therefore assessed against those lots what he thought it would cost to build such sewers. For such sewers they would have been assessed per front foot. Upon this theory each of these lots would be benefited according to their frontage, and it was so calculated.

If the superintendent believed that this method did show the relative benefits to the different parcels, he would have used these precise calculations had he made a tabulated statement of relative benefits. Can we say that the assessment shows two assessments, or an illegal method, because it shows how he reached his conclusion? I think not.

I think, also, that if the method was wrong the defendant should have appealed to the board. They could have afforded any relief to which he was entitled. He was not in the position of a defendant in an ordinary suit upon whom a summons had been served, but who makes default. In such case the judgment. must be warranted by the notice contained in the summons. The defendant is not supposed to be in court, but to have consented to the relief demanded. In such a proceeding as this a property owner is not expected to appear by counsel, but he is supposed to be aware of the steps taken, and is authorized and required to make known his grievances. Unless he does so he is precluded, unless the board is wholly without jurisdiction, or the procedure has been departed from in some vital matter.

The judgment is affirmed.

McFARLAND, J., and HENSHAW, J., concurred.

Hearing in Bank denied.