[Civ. No. 3782. First Appellate District, Division One.—June 22, 1921].

## CHARLES BUTTERS et al., Appellants, v. CITY OF OAKLAND et al., Respondents.

[1] STREET LAW—CHANGE OF GRADES—IMPROVEMENT UNDER ACT OF 1911.—A city council, after adopting an ordinance under the so-called "Change of Grade Act" of 1909 (Stats. 1909, p. 1068), purporting to change certain street grades, may select the Improvement Act of 1911 as the act under which improvment work on said streets, the grades of which have thus been changed of record, shall be done.

[2] ID.—CHANGE OF GRADE ORDINANCE—TITLE—SUBJECTS EMBRACED. An ordinance of the city of Oakland, under which the change of grade of a main thoroughfare is accomplished, does not embrace more than one subject in its title, contrary to the provisions of section 46, subdivision 4, of the charter, and is not void merely because several streets in the same neighborhood are affected by the change, or that in the course of making the change it becomes

necessary incidentally to give the official name of one of said streets other than said main thoroughfare.

[3] ID.—NONCOLLUSIVE AFFIDAVIT—OAKLAND CHARTER PROVISION NOT APPLICABLE.—The provision of section 126 of article XIX of the Oakland charter to the effect that a contractor's bid must be accompanied by his affidavit that his bid is genuine and not sham or collusive, is not applicable to street improvements, where the cost and expense is to be paid by special assessment on private property and the council has adopted the Improvement Act of 1911 as the general law under which the improvement is to be made.

[4] ID.—FAILURE TO FILE NONCOLLUSIVE AFFIDAVIT—WAIVER OF OB JECTION BY PROPERTY OWNER.—Where street improvement is undertaken under the Improvement Act of 1911, the objection that the contractor's bid was not accompanied by a noncollusive affidavit is such an objection as is waived by the property owner through his failure to avail himself of the provisions of section 16 of said act by filing with the clerk of the council a notice in writing stating in what respect the acts and proceedings thus far taken are irregular, defective, erroneous, or faulty.

[5] ID.—CHANGE OF GRADE—COMPENSATION FOR DAMAGE—REMEDY OF PROPERTY OWNERS.—Where a municipality, after establishing the official grade of a street and without instituting any proceeding to ascertain and provide for the payment of the damage caused by the raising or lowering of the level of the street by the change of grade, proceeds to improve the street under the Street Improvement Act of 1911, and to reduce it to the official grade, the remedy of property owners is not to enjoin the collection of the assessment levied to pay the cost of the work, but to enjoin the performance of the contract prior to the work having been done until damages are paid, in case the result of such work would cause damage to such abutting owners. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Alameda County. Fred V. Wood, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

C. Irving Wright, F. Eldred Boland and L. D. Manning for Appellants.

H. L. Hagan, City Attorney, John J. Earle, Assistant City Attorney, Johnson & Shaw and R. M. Soto for Respondents.

RICHARDS, J.—The plaintiffs in this action sought to enjoin the recordation of a certain assessment for street improvements in the city of Oakland done under the district plan provided for by the terms of the "Improvement Act of 1911" [Stats. 1911, p. 730]. The same assessment was before the supreme court in the case of *Rockridge Place* v. *City of Oakland,* 178 Cal. 58, [172 Pac. 1110], in which case the facts were quite fully stated and a number of the points discussed on this appeal were decided. It will be only necessary, therefore, to refer to such of the facts of the case as may be germane to the legal questions presented for the first time upon this appeal.

[1] Somewhat more than one year prior to the adoption by the council of the city of Oakland of the resolution of intention by which the proceedings under review upon this appeal were initiated the said council adopted an ordinance under the so-called "Change of Grade Act" of 1909 (Stats. 1909, p. 1018), purporting to change certain grades on Broadway, which at the point along its route affected by the present proceeding was at that time unimproved in the sense that it had not previously been graded or paved. While this Change of Grade Act of 1909 prescribes a detailed procedure for accomplishing the change or modification of the grades of public streets after notice and an opportunity to protest and have a hearing thereon upon the part of abutting owners, it contains no provision for the assessment or award of damages arising out of such change of grade; and this probably for the reason that the change or modification of the grade of the street affected thereby is merely a record or paper change out of which in itself no particular damage to abutting property owners could arise. The appellant herein, however, seems to complain that the council of Oakland saw fit to change the grade of Broadway, and then to cause the improvement of said street to be made to such changed grade under another and different act, viz., the Improvement Act of 1911.

We fail to appreciate the force of this contention, since the change of grade of 1909 made no provision either for damages, or for the doing of improvement work upon streets, the grades of which had thus been changed of record. Whatever improvements were thereafter to be done upon

such street must therefore necessarily be initiated and carried forward under some other street improvement act; and we can see no reason why the council was not at liberty to select the Improvement Act of 1911 as the act under which the improvement in question was to be accomplished, or wherein the plaintiffs had any ground of complaint at the action of the council in the selection of said act in making such street improvement.

[2] The appellant, and in this same connection, urges that the ordinance of the council under which the change of grade of Broadway was accomplished was invalid for the reason that it embraced more than one subject in its title, contrary to the provisions of section 46, subdivision 4, of the Oakland charter.

We do not find this objection to be well founded. The general subject of the ordinance in question was that of the change of grade of certain streets in the same neighborhood; and the fact that there were several of these streets affected by the proposed change of grade, or that in the course of making the change it became necessary incidentally to give the official name of Patton Street to one of said streets, did not render the ordinance void as embracing more than one subject. It is a well-established rule that the provisions of constitutions and laws relating to the subject matter and titles of acts should be construed liberally so as to permit of matters which are germane to the main purpose of the enactment to be included in it (36 Cyc. 1017; Cooley's Constitutional Limitations, 7th ed., p. 204).

[3] The next contention of the appellants is, that the contract for the street work in payment for which the assessment in question was levied, and about to be recorded, was void for the reason that the bid of the contractor was not accompanied by his affidavit, that his bid was genuine and not sham or collusive, required by the terms of section 126 of article XIX of the Oakland charter. This section of the charter, however, is a portion of the general article therein entitled "Public Work and Supplies," and is not a portion of those other parts or provisions in said charter having special reference to street work. When these are referred to they are found to contain the following provision: "Whenever in the judgment of the council the cost and ex-

pense of any of the foregoing (street improvements) should be paid by special assessment on private property, the general laws of the State of California in force at the time of the improvement shall govern and control, and all procedure shall be in conformity thereto.'' (Charter, subd. 46, sec. 15, art XIV.) The Street Improvement Act of 1911, expressly adopted by the Oakland council as the general law under which the improvement in question was to be made, does not contain any requirement as to a noncollusive affidavit on the part of the contractor; and we are of the opinion that the terms of said general law are controlling in the premises, and that the provision of said charter relied upon by the appellants does not apply to street work undertaken under this general law. The case of *Barber Asphalt Pav. Co.* v. *Costa*, 171 Cal. 138, [152 Pac. 296], cited by the appellants in support of their contention, shows when examined a material difference between the terms of the charter of San Jose and those of the charter of Oakland in respect to this particular matter, since by the terms of the former charter its provisions are expressly made controlling over the general law in case of a conflict between the two; while on the other hand the charter of Oakland gives the entire control over this class of street improvements to the general law. **[4]** In addition it may be said that even if it were to be conceded that the objection which the appellant now urges to the contractor's bid was originally a good and valid objection thereto, it was such an objection as would be waived by the property owner through his failure to avail himself of the provisions of section 16 of the Improvement Act in question by filing with the clerk of the council a notice in writing stating in what respect the acts and proceedings thus far taken were irregular, defective, erroneous, or faulty. Having thus failed to avail himself of this special remedy the property owner cannot, after the contractor has expended his time and money in the improvement of the street in front of his property, be heard to complain of informalities in his bid for the work. (*Lent* v. *Tilson*, 72 Cal. 405, [14 Pac. 71]; *Harney* v. *Benson*, 113 Cal. 314, [45 Pac. 687]; *O'Day* v. *Mitchell*, 144 Cal. 374, [77 Pac. 1020].)

The next several contentions of the appellants have reference to questions which were considered and decided ad-

versely to the appellants' position in the case of *Rock Ridge Place* v. *City of Oakland, supra,* and hence a restatement or reconsideration of those matters is deemed unnecessary.

The case of *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24, [L. R. A. 1918E, 197, 148 Pac. 217], relied upon by the appellants as supporting their contention that the assessment was void because this property was not shown to have been benefited, has been distinguished from cases identical with the case at bar by both the supreme and appellate tribunals, the basis of distinction being that that case was a proceeding in eminent domain, while these are street assessment cases (*Cutting* v. *Vaughn,* 182 Cal. 151, [187 Pac. 19]; *Hutchinson Co.* v. *Coughlin,* 42 Cal. App. 664, [184 Pac. 435]). We think the distinction therein drawn has application to the facts of the case at bar.

Judgment affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 19, 1921, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing in this court is denied. [5] The record indicates that the city of Oakland, after establishing the official grade of the street and without instituting any proceeding to ascertain and provide for the payment of the damages caused by the raising or lowering of the level of the street by the change of grade, proceeded to improve the street under the Street Improvement Act of 1911, and reduced it to the official grade. The effect would be, if nothing further occurred, that the change of grade would actually take place without previous compensation to the owners for the damages caused thereby, if any. If this closed the case so far as the right to damages was concerned we do not think the principles of justice would allow such a proceeding without the test of an examination in the courts. But the remedy of the property owners in such a case is not to enjoin the collection of the assessment levied to pay the cost of the work, but to enjoin the performance of the contract prior to the work having

been done until damages are paid, in case the result of such work would cause damage to the abutting property. It constitutes no defense against the collection of the assessment. That the city is liable for damage caused to the abutting property by excavation or fills in a street in front thereof, see *Eachus* v. *Los Angeles,* 130 Cal. 493, [80 Am. St. Rep. 147, 62 Pac. 829] ; *Eachus* v. *Los Angeles etc. Co.,* 103 Cal. 614, [42 Am. St. Rep. 149, 37 Pac. 750] ; *Reardon* v. *San Francisco,* 66 Cal. 506, [56 Am. Rep. 109, 6 Pac. 317].

All the Justices concurred, except Angellotti, C. J., who was absent.