[Civ. No. 6111. Second Appellate District, Division Two.—August 23, 1928.]

ROBERT W. BRYDON, Appellant, v. CITY OF HERMOSA BEACH et al., Respondents.

616

Robert Young for Appellant.

T. W. Marchant, City Attorney, and Kimball Fletcher for Respondents.

O'Melveny, Tuller & Myers, Arthur M. Ellis and Paul S. Honberger, *Amici Curiae.*

HAZLETT, J., *pro tem.*—This is an action for an injunction against the City of Hermosa Beach, the mayor, the members of the city council, and superintendent of streets of the city, to enjoin them from receiving any bids or making any contracts for the construction of certain street improvements upon certain public streets in the city, and from levying any assessment or taking other proceedings in the matter, and to enjoin a certain other action predicated in eminent domain, and for general relief. Plaintiff Brydon and other parties plaintiff brought this action as owners in the district of lands to be assessed for the improvement, and they allege that they sue for themselves and for all other property owners similarly situated. The proceedings for the improvement are under the "Improvement Act of 1911."

Plaintiffs introduced their evidence, and defendants, being content therewith, introduced none, but rested, and judgment was given for defendants, from which judgment plaintiff Brydon alone appeals.

Between the time when the court announced its decision and the entry of the judgment, plaintiffs moved the court for an injunction to stay all proceedings in the matter of the improvement pending an appeal, which they proposed to take from the judgment when entered, which motion was heard and denied before the judgment was entered, and plaintiff Brydon alone appeals from the order denying the injunction pending appeal.

Respondents contend that the decision of the trial court denying an injunction pending the appeal from the judgment is final and that no appeal lies therefrom. They cite in support of this contention *Richards* v. *McMillan,* 6 Cal. 422 [65 Am. Dec. 521]; *Porter* v. *Jennings,* 89 Cal. 440 [26 Pac. 965]; *City of Pasadena* v. *Superior Court,* 157 Cal. 781 [109 Pac. 620]; and certain decisions of the supreme court of New York and of the United States supreme court.

It was held in the Richards case that "An appeal does not lay from an order refusing injunction." This opinion was handed down in 1856, and is not authority now for the reason that the first legislative enactment providing for appeal from such an order was adopted in 1866 (Stats. 1865–66, p. 707).

In the Porter case the court announced that "an order granting or dissolving an injunction is a matter of discretion with the lower court which this court will not review except where an abuse of that discretion is urged." This case recognizes the rule that an appeal may lie from an order granting or dissolving an injunction.

The City of Pasadena case was an original application for a writ of prohibition to prevent the superior court from maintaining and enforcing an injunction granted to preserve the *status quo* of the parties pending appeal from a judgment denying a permanent injunction. The question involved was whether the trial court had the right to grant the injunction to preserve the fruits of a possibly successful litigation to the appellants from an adverse judgment against them. The supreme court held that the trial court had the right to grant the injunction and denied the writ. In discussing the law bearing upon the question reference was made to the *Slaughterhouse Cases* (10 Wall. 273 [19 L. Ed. 915]), wherein the power of the chancery courts of England to maintain the *status quo* of the subject matter of litigation pending appeal was discussed. The holding referred to was that such power existed in the trial courts, "and should always be exercised, when any irremediable injury may result from the effect of the decree as rendered, but it is a discretionary power, *and its exercise or nonexercise is not an appealable matter.*" (Italics ours.) This clause, which we have italicized, quoted from the *Slaughterhouse Cases, supra,* is *obiter dictum* as related to the matter under consideration in the Pasadena case, and is not controlling.

The opinions of the New York supreme court and of the supreme court of the United States, cited by respondents, are to the effect that where the matter of granting, continuing, dissolving or refusing an injunction *pendente lite* is addressed to the discretion of the trial court, its holding will not be disturbed on appeal. (*Strasser* v. *Moonelis*, 108 N. Y. 611 [15 N. E. 730]; *Pfohl* v. *Simpson*, 59 N. Y. 174; *Brown* v. *Cheese Assn.*, 59 N. Y. 242; *Schneider* v. *City of Rochester*, 155 N. Y. 619 [50 N. E. 291]; *Buffington* v. *Harvey*, 95 U. S. 99 [24 L. Ed. 381, see, also Rose's U. S. Notes]); and the same rule is announced in relation to an order granting an injunction to maintain the *status quo*

pending appeal. (*Hovey* v. *McDonald,* 109 U. S. 150 [27 L. Ed. 888, 3 Sup. Ct. Rep. 136] ; *Virginia Ry. Co.* v. *United States,* 272 U. S. 658 [71 L. Ed. 463, 47 Sup. Ct. Rep. 222].) These decisions, however, are not authority in California for the reasons hereinafter stated.

Such an order may properly be made under section 681 of the Code of Civil Procedure (*Pierce* v. *City of Los Angeles,* 159 Cal. 516 [114 Pac. 818]) ; and, where not prohibited by statute, the superior court, under section 5 of article VI of the constitution, has power to make it. (*Tulare Irr. Dist.* v. *Superior Court,* 197 Cal. 649, 660 [242 Pac. 725]. See, also, *Pasadena* v. *Superior Court, supra; Mulvey* v. *Superior Court,* 22 Cal. App. 514 [135 Pac. 53] ; *Porter* v. *Superior Court,* 78 Cal. App. 790 [248 Pac. 1077] ; *Wheeler* v. *Superior Court,* 82 Cal. App. 202 [255 Pac. 275] ; *United Railroads* v. *Superior Court,* 170 Cal. 755, 758 [Ann. Cas. 1916E, 199, 151 Pac. 129] ; *American Trading Co.* v. *Superior Court,* 192 Cal. 770 [222 Pac. 142].) The power exists under section 3421, of the Civil Code, relating to provisional injunctions, and under sections 525 to and including 533, of the Code of Civil Procedure, relating to provisional remedies in civil actions. (*United Railroads* v. *Superior Court, supra; American Trading Co.* v. *Superior Court, supra.*)

Our statute permitting appeals from the superior court (sec. 963, Code Civ. Proc.) provides that "An appeal may be taken from a superior court in the following cases: . . . from an order . . . granting or dissolving an injunction or refusing to grant or dissolve an injunction, . . . ," and our courts have held that under that section an appeal lies from an order granting an injunction *pendente lite,* and so far as mandatory in character, its enforcement may be stayed pending appeal (*Dowdell* v. *Shoo,* 159 Cal. 448, 455 [114 Pac. 579] ; *United Railroads* v. *Superior Court, supra; American Trading Co.* v. *Superior Court, supra*). In this regard, it matters not whether the granting of the order by the trial court is addressed solely to the discretion of that court or is a matter of right vested in the litigant. It is clear that the intent of the statute is that all orders granting or refusing injunctions, whether temporary or permanent or provisional pending appeal, shall be appealable, and this construction finds support in the cases of *United Railroads* v. *Superior Court* and

*American Trading Co.* v. *Superior Court, supra.* In the United Railroads case the Supreme Court held that where, upon notice, an order is made granting or dissolving a temporary or provisional injunction to continue during the pendency and until final determination of the action, the remedy is by appeal. In the American Trading Co. case it was held that an order granting an injunction pending appeal after having refused an injunction *pendente lite* can be sustained only on the theory that the order "is a portion of the order denying the injunction *pendente lite,* for where the court has refused an injunction, it could not subsequently grant the injunction, because the order refusing the injunction is an appealable order." It is well settled that an appeal may be taken from the whole *or from any portion* of an appealable order. (Italics ours.) (Section 940, Code Civ. Proc.; *Donnelly* v. *Gray Bros.,* 3 Cal. App. 59 [84 Pac. 451].)

An inspection of the record in this appeal from the order of the trial court denying an injunction to plaintiffs pending appeal from the judgment, discloses that it will be necessary to examine the whole case in order to determine whether the trial court erred in refusing the injunction. Therefore, the appeal from the order will be considered in connection with the appeal from the judgment.

The improvement proposed, as described in the resolution of intention, was to be done upon Hermosa Avenue and certain adjacent streets in the city. Hermosa Avenue is the principal thoroughfare of the city, extending entirely through it along the Pacific Ocean, a distance of about two miles, and is a double roadway with the right of way of the Pacific Electric Railway dividing it. This right of way is and for some time has been used by the company as an electrically equipped double-tracked interurban railway passing through the city and connecting it with other cities and territory of Los Angeles County. The equipment includes trolley poles located about the center of the right of way, supporting overhead wires. In general, the improvement so proposed was to consist of grading, paving, construction of curbs, sidewalks, gutters, culverts, sewer connections, and lighting posts and standards together with certain conduits, cables, wires, lights, and appurtenances, the details and more particular locations of which are shown upon the plans, speci-

fications and profiles for the same then on file in the office of the city clerk of the city, and referred to in the resolution for a further and more particular description of the work and improvement. The resolution also provides that the work and improvement shall be chargeable upon a district described therein.

In his brief, appellant admits that the proceedings are within the law so far as the form and letter are concerned, but he asserts that they are not within the spirit of the law.

His main contention is that the greater number of the lighting posts were designed for and to be used by the Pacific Electric Railway Company as trolley poles under some agreement or understanding with the company, and that the city council did not so state in the resolution of intention, but intentionally omitted to so state for the reasons that the members of the council knew that such statement would be unlawful and would defeat the improvement. In this connection, he also contends that the greater number of posts were made heavier, longer, and more expensive than necessary for lighting purposes in order that the company might use them for trolley poles, thus increasing the amount of the assessment in the district. For these reasons he asserts that the injunction should have been granted.

The portion of the resolution relating to the lighting system complained of, proposed to be installed, is as follows:

"That Hermosa avenue, and certain property for the widening of Hermosa avenue (between designated points) . . . be improved . . . by the installation of certain steel lighting posts, known as King Ferronite Standards, and certain wood lighting posts, together with certain conduits, cables, wires, lights and other appurtenances." The plans, specifications and profiles referred to show the character, sizes and locations of the lighting posts, the height of the lighting centers thereon, that 194 of such posts were to be installed in the avenue outside but adjacent to the right of way of the company, that lighting equipment was to be installed upon 133 of them and that the remaining 61 were to be installed without such equipment, that 181 were to be 34 feet or more in height above the grade of the street while the lighting center was to be at the height of 22 feet, and that seven of the posts were to be 22½ feet high. The testimony showed that all the posts would be suitable to be

used for ornamental lighting purposes, that the lighting center could well be at the height of 18 or 19 feet to properly light the avenue, that 181 of the posts would be suitable to be used as trolley poles as well as for lighting purposes, that the posts suitable to be used for both purposes cost more than posts for lighting equipment alone, but there is no competent evidence as to the amount of such excess cost. However, the descriptions and specifications of the posts and equipment contained in the resolution of intention and in the plans, specifications and profiles, are so full and complete that there is no ambiguity or uncertainty as to their dimensions or appliances or their use for lighting purposes, immediate or prospective. Therefore the rule relied on by appellant, announced in *Southwest Paving Co.* v. *Wilson,* 57 Cal. App. 251, 255 [206 Pac. 776], to the effect that where a material variance exists between the description of the work as set out in the resolution of intention and in the plans and specifications the proceedings are thereby invalidated, does not apply in this case. The court found upon the evidence that the improvement provided for in the resolution will cost approximately $300,000, the lighting system portion thereof approximately $85,000, and that all of the posts are suitable, useful and proposed to be used by the city as a part of the ornamental lighting system and most of them susceptible for use in supporting trolley wires.

Notice of the adoption of the resolution and of the hour and place where objections to the proposed work might be made was given and published in compliance with the act, but none of the plaintiffs appeared or objected within the time limited or at all.

Objections and protests were made by other persons, not parties to this action, who were owners of about sixteen per cent of the lands in the proposed assessment district, and after a hearing by the council, the protests were overruled and the council adopted a resolution ordering the work. The act of 1911 provides in section 6 that under such circumstances the decision of the council "shall be final and conclusive," and in section 7, that "immediately thereupon (upon overruling the protests) the city council shall be deemed to have acquired jurisdiction to order the proposed improvements." Section 82 of the act provides that the "act shall be liberally construed to the end that its

purposes may be effective. . . . The exclusive remedy of any person affected or aggrieved thereby (by any error, irregularity or informality or neglect or omission in any procedure under the act of any officer of the city) shall be by appeal to the city council as herein provided.''

■ Under the act, the failure of owners of property proposed to be assessed to protest to the council within the time fixed therefor is fatal to an action by them to enjoin the council from ordering the improvement or entering into a contract therefor. They cannot raise an objection to the improvement, in the action, which was not previously made by them to the council (*Blake* v. *City of Eureka,* 201 Cal. 643 [258 Pac. 945], and cases therein cited; *Noyes III* v. *Chambers,* 202 Cal. 542 [261 Pac. 1006]). By their failure to protest they are deemed to have submitted themselves to the jurisdiction of the council in the determination of the necessity for the improvements. (*Swall* v. *County of Los Angeles,* 42 Cal. App. 758; 765 [184 Pac. 406]; *Duncan* v. *Ramish,* 142 Cal. 686, 691 [76 Pac. 661].) These rules are subject to the following exceptions: Where the council has no power to do the work proposed (*Harney* v. *Benson,* 113 Cal. 314, 317 [45 Pac. 687]); where there is fraud or collusion entering into the proceedings (*People* v. *City of Los Angeles,* 62 Cal. App. 781 [218 Pac. 63]; and where the council was guilty of an abuse of discretion equivalent to fraud or failed to give the required notice of the improvement. (*Hanson* v. *Board of Trustees,* 74 Cal. App. 588, 590 [241 Pac. 572].) Unless plaintiffs have shown that this case comes under one or more of the exceptions, their action is not well founded.

■ Appellant contends that the council was guilty of acts amounting to a fraud upon the owners of the lands in the assessment district, by their failure to specify that nearly all of the posts designated as posts for lighting purposes were in fact designed to be used also as trolley poles for the benefit of the Pacific Electric Railway Company, and some of them exclusively for the latter use.

The evidence does not support this contention. It shows in fact that all the posts would be suitable for carrying the lighting equipment, and the council, as it had the right to do, declared that they were to be installed for that purpose, and their decision in the matter was final. (*Blake* v.

*City of Eureka, supra.*) It is the exclusive province of the council to determine whether the improvement is of the character adaptable or needed for the purposes for which it is to be made. (*Harney* v. *Benson, Duncan* v. *Ramish,* and *Swall* v. *County of Los Angeles, supra.*) The fact that the posts may be taller and larger than necessary for lighting purposes, or may be suitable for and may be used as trolley poles by the company, or may incidentally benefit the company, cannot invalidate the proceedings, and the council is not deprived of its authority to proceed with the work by reason of any such condition or result. (See *Brown* v. *Board of Supervisors,* 124 Cal. 274, 282 [57 Pac. 82].)

If the trial court had held that the posts were somewhat taller and heavier than necessary for lighting purposes, the determination of the council as to the character of posts adopted, being within the discretion of the council, is final in the absence of protest on the part of plaintiffs. It was held in *Harney* v. *Benson, supra,* that where the board of supervisors of San Francisco adopted a resolution of intention for the construction of a sewer it appeared that a small part of the work as designed had no outlet and at the time would be useless. The court said that it was the province of the board "to determine whether sewers are needed and what districts will be benefited thereby. Upon these points their judgment is ordinarily final, and there may have been, in the judgment of the board, other reasons why this sewer should be thus constructed, although it would not be at once utilized. . . . The work was within the general power of the board, although to construct this sewer may have been an improvident use of power." Also, our supreme court, in the case of *Noyes III* v. *Chambers, supra,* held that even though some portions of the improvements appeared to be wholly useless, if proper notice was given under the act, and the property owners failed to object, they could not collaterally attack the proceedings.

Should the question of the use of the posts as trolley poles by the company arise in the future, the right to permit such use may be tested then. (See *Clark* v. *Los Angeles,* 160 Cal. 30, 37 [116 Pac. 722].) In fact, it has been held that although an improvement may be used by a pri-

vately owned utility, it may be constructed under public improvement proceedings and the use permitted upon proper terms and for proper compensation. (*Larsen* v. *San Francisco*, 182 Cal. 1 [186 Pac. 757]; *Milhein* v. *Moffat Tunnel District*, 262 U. S. 710 [67 L. Ed. 1194, 42 Sup. Ct. Rep. 694]; *County of Los Angeles* v. *Hunt*, 198 Cal. 753 [247 Pac. 897].)

In the Larsen case it appeared that the board of supervisors of San Francisco adopted a resolution for the construction of a tunnel known as the "Twin Peaks Tunnel," *"for public uses"* but did not specify the particular public uses to which it was to be devoted. In fact it was constructed to be used by street-car companies, or by the city and a street-car company, by installing and operating street-car lines through it for passenger service. The supreme court held that the uses were public uses, that the construction of the tunnel would be a benefit to the lands assessed, that the resolution was sufficient and that the proceedings were valid.

In the Milhein case it appeared that the legislature of Colorado adopted an act to provide for the construction of the Moffat tunnel through the Continental Divide, and for the creation of an improvement district to be assessed to pay its cost. The act declared that the tunnel should be constructed to provide an avenue of communication by transportation through the Continental Divide between the eastern and western portions of the state, and would promote the health, comfort, safety, convenience, and welfare of the people of the state. The contesting land owners claimed that the purposes of the act were not public but were private because the tunnel was to be so located as to be practically a part of the Moffat Road, a privately owned common carrier railroad, to save the railroad from bankruptcy and for the people of the state. The court announced that subway tunnels may be constructed by municipalities for lease to street railway and rapid transit lines for use as common carriers, and that for the construction of which the power of taxation may be exercised, and held that the proposed use by the railroad company was a public use, that the act was not in contravention of private rights, and even if the act had specifically provided that the tunnel was designed to be leased to the

company, a carrier of passengers and freights, it would be a public improvement for public use.

In this appeal the question whether the city may permit the company to make joint use of the poles is not before us. However, it fairly appears that in proposing to install the larger posts the council had in mind the elimination of the trolley poles now in use by the company, thus benefiting the district by preventing an unsightly duplication of poles on a beautiful avenue, but the main and primary use, as determined by the council and as found by the court, was for the lighting purposes.

■ Appellant calls attention to the allegations of the amended complaint which were stricken out on motion of defendants, wherein plaintiffs alleged that on the day the resolution of intention was adopted the city commenced in the superior court an action against the Pacific Electric Railway Company and others to condemn two portions of the right of way of the company and make the portions parts of and to widen Hermosa Avenue, to be improved in connection with the avenue as it existed prior thereto; that there was filed with the complaint in that action the affidavit of the mayor of the city to the effect that those portions of the right of way were of the value of $49,100, that the court then made its order for the deposit of that sum in court, which was then done, and that an order was made for the immediate possession by the city of portions to be condemned. Also that said deposit was made from moneys deposited with the city by the county of Los Angeles out of funds derived by the county from automobile licenses and other moneys received by virtue of the California Vehicle Act. Appellant contends that the allegations were material and competent and asserts that the city is without authority to use such funds for paying for property condemned in such action.

The order of the court striking out the allegations was proper for the reason, among others, that if the fund may not be so used, the city will be required to pay the value of the lands to be condemned out of other funds which may be legally expended for that purpose. Assuming without holding that the merits of that action might properly be determined in this suit, the contention does not go to the merits of that action.

■ Appellant contends that there was a secret agreement between the council and the company for the erection of the posts for use as trolley poles, and in support of this contention refers to the fact that plaintiffs offered in evidence a resolution of the council adopted before the resolution of intention was adopted, directing the city attorney to negotiate with the company to secure the needed portions of the company's right of way for widening Hermosa Avenue, and, if not successful, to bring condemnation proceedings for acquiring the land; that they also offered in evidence another resolution of the council adopted prior to the adoption of the resolution of intention but after the adoption of resolution of instructions to the city attorney, reciting that the terms of a certain letter from the general manager of the company "be accepted, and the letter filed for the use of the city engineer and the city attorney in the condemnation proceedings now being started by the city''; and that plaintiffs offered in evidence the letter referred to, which letter mentions the proposed widening and improving of the two roadways of Hermosa Avenue, and states that a member of the council and the city engineer requested for comparative purposes an estimate of costs involved if the width of the right of way is reduced, paving done for four blocks on the right of way, and easement given over same and over two additional crossings, paving done on ten crossings where easements exist, and laying girder rails on certain crossings, and specifying the net cost of the same at $49,010, after deducting certain credits, including $4,100 as contribution toward poles and $8,840 estimated cost of filling the right of way with crushed rock; also proposing that in return for the easement the city and property owners are to protect the company from any assessment for the street improvement or street widening, except a nominal one of $1 for each parcel of right of way involved, the proposition to be subject to the approval of the board of directors of the company. Defendants objected to the introduction of each of the resolutions and the letter, respectively, upon grounds that they were incompetent, irrelevant, and immaterial, were negotiations only which did not ripen into a contract, related to the taking of the portions of the right of way of the company later involved in the action in condemnation, and were

nothing upon whch any right of action could be based. These objections were sustained and appellant assigns the rulings as error. The rulings were correct. It is not shown that any contract of any sort, secret or open, was made between the council and the company. While the letter relates to matters in addition to the taking of portions of the right of way for street purposes, the resolutions adopted by the council relate only to acquiring the strips from the right of way, and the council, while resolving "that the terms of the letter be accepted" limited its action thereon to filing it "for the use of the city engineer and city attorney in the condemnation proceedings now being started." Had any such contract been made as claimed by appellant, the "right of way deeds" referred to in the prior resolution should have been obtained as a result thereof, and the action in condemnation would have been a useless thing and an unnecessary expense. It is apparent that the council and the company failed to agree, and therefore the action in condemnation was commenced.

■ One A. R. Holston, a member of the city council, was called as a witness by plaintiffs and it was sought to interrogate him in relation to discussions between the members of the council prior to and about the time of the adoption of the resolution of intention, regarding an alleged plan to install combination lighting and trolley posts and in relation to an alleged form of contract between the council and the company. Counsel for plaintiffs stated to the court that plaintiffs proposed to show by the witness that the plan was to install posts that would serve as trolley poles, that the cost thereof should be assessed upon the district, that the majority of the council stated that unless the contract was made with the company the proceedings for the improvement would not go through, that he believed the witness would testify that the contract was signed by the company and delivered to the council for approval, and that the proposed contract provided that the company should be relieved from all assessment in the matter of the improvement except a nominal assessment of four dollars. By his questions asked the witness, counsel for plaintiffs indicated that he understood and expected the witness to testify that the proposed contract was not approved by the council but was referred to the city attorney. Plain-

tiff's counsel produced what he stated was a copy of the proposed contract and had it marked for identification, but the copy is not shown in the record in this appeal. Defendants objected to each of the questions asked the witness in regard to the said matters sought to be shown by plaintiffs, on the grounds that they were incompetent, irrelevant, and immaterial, which objections were sustained, the court stating that there was no showing that any such conversations ripened into formal action by the council or into any agreement or understanding whatever, but all that had been shown and was then being attempted to be shown was informal discussions and tentative propositions. Assuming, but not holding, that under the plea of fraud or concealment made in the amended complaint, the trial court should have permitted the questions to be answered in order to give the fullest latitude to plaintiffs, there is no clear inference that the offered evidence, if admitted, would show any agreement, secret or open, made by the council with the company. In fact, as hereinbefore stated, the record induces the conclusion that no such agreement or any agreement with the company was made. The only facts attempted to be shown which might tend to raise a suspicion that there was some understanding between the council and the company being that in the action for condemnation the affidavit of the mayor states as the value of the two strips of right of way to be taken an amount the same as the letter of the manager of the company states is the net costs to the company occasioned by the improvement, when considered with the evidence that the lighting posts were to be suitable for trolley poles for use by the company. These matters are wholly insufficient to show any agreement in regard to the character of the posts or their joint use. Appellant's contentions above stated are without merit.

█ Appellant also contends that the proceedings were invalid because of the facts that certain patented devices were specified to be used in installing the lighting equipment and also patented materials were specified for use in doing the paving. It appears that the agreements for the use of the same and the prices thereof were on file in the office of the city clerk for reference by the property owners and the bidders for the work in making their bids. In the case of *Gualco* v. *City of Bakersfield*, 86 Cal. App. 167

[260 Pac. 308], and in the cases therein cited it was held that under such circumstances, where the right to require competitive bidding is preserved, such materials may properly be specified and used. (See, also, *Braun* v. *McGuire*, 201 Cal. 134 [255 Pac. 808].) We can see no reason why patented devices for use in the lighting system may not likewise be specified and used.

Finally, after full presentation of plaintiffs' case, the trial court, upon the evidence adduced, found against plaintiffs' contentions upon every question raised, holding that the act of 1911 was substantially complied with by the council, and that the council did not exceed its powers. The judgment of the trial court of what is a substantial compliance with the statute in a street improvement proceeding is to be exercised in the first instance by the trial court. "If the case is one where a requirement of the statute has not been entirely disregarded, its determination of the question of substantial compliance ought to be controlling in the absence of abuse of discretion." (*Beck* v. *Ransome-Crummey Co.*, 42 Cal. App. 674, 682 [184 Pac. 431]; *Standard Oil Co.* v. *United States*, 222 U. S. 1 [Ann. Cas. 1912D, 734, 34 L. R. A. (N. S.) 834, 55 L. Ed. 619, 31 Sup. Ct. Rep. 502, see, also, Rose's U. S. Notes].) The ruling of a trial court upon a motion for an injunction pending appeal in the action rests in the sound discretion of that court, and the ruling must be sustained on appeal from it unless abuse of discretion is shown. We find no abuse of discretion on the part of the trial court.

The other points presented by appellant which are not herein mentioned are collateral to and connected with the questions herein decided and we do not deem it necessary to give them further consideration.

The order denying plaintiff's motion for an injunction pending appeal and the judgment are affirmed.

Craig, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 22, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 22, 1928.

All the Justices concurred.