FOLEY BROTHERS, INC., AND ANOTHER v. JAMES C. MAR-
SHALL, COMMISSIONER OF HIGHWAYS, AND ANOTHER.

123 N. W. (2d) 387.

August 9, 1963—Nos. 39,154, 39,155, 39,161.

*Harry G. Costello, A. Patrick Leighton, Faricy, Moore, Costello
& Hart,* and *King & MacGregor,* for appellant Industrial.

*Walter F. Mondale,* Attorney General, *Donald P. Kane,* Special
Assistant Attorney General, and *William E. Mullin,* Special Assistant
Attorney General, for appellant commissioners.

*Lawrence J. Hayes, James W. Brehl,* and *Maun, Hazel, Green,
Hayes, Simon & Aretz,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the trial court granting a temporary injunction.

The facts are not in dispute. In May 1963, James C. Marshall, commissioner of highways of the State of Minnesota, issued invitations to bid on the construction of approximately 1.7 miles of Federal interstate highway located in the city of St. Paul. The project contemplated the construction of some nine bridges and roadways.

The proposal which constituted this invitation to bid contained paragraph B-5, which read:

"Each bidder shall submit with his proposal an affidavit certifying that in connection with the proposal he has not either directly or indirectly entered into any agreement, participated in any collusion or otherwise taken any action in restraint of free competitive bidding."

On the first page of the proposal the prospective bidder was advised to see the reverse side for the form of noncollusion affidavit that was required, and on the back of the front cover was to be found the affidavit ready for execution by the prospective bidder.

The bids were to be submitted not later than June 7, 1963. Plaintiff in this action, Foley Brothers, Inc., referred to hereinafter as Foley, duly and timely tendered an executed bid in the amount of $3,453,613.80. Intervenor, Industrial Construction Division Allied Structural Steel Company and Carl Bolander and Sons, referred to hereinafter as Industrial, submitted a bid in the amount of $3,468,968.08. Foley's bid was low and was $15,354 less than that of Industrial, the second lowest bidder.

Foley inadvertently omitted to include the required affidavit of noncollusion in its bid. It did contain a certificate, apparently used prior to 1962, which read:

"We hereby certify that we are the only person interested in this proposal as principal, that this proposal is made and submitted without fraud or collusion with any other person, firm or corporation whatsoever, that an examination has been made of the site of the

work and the Contract form, together with the Plans, Specifications and Special Provisions for the improvement."

At the opening of bids at 10 a. m. on June 7, 1963, the Foley bid was not considered for the reason that it was unaccompanied by a duly completed noncollusion affidavit. On the afternoon of the same day, Foley submitted to the commissioner a letter in which it enclosed an executed affidavit of noncollusion. The commissioner refused to accept the affidavit at that time or to consider the bid.

The commissioner concedes that the bid of Foley, except for the noncollusion affidavit, was complete and acceptable and that its bid was the lowest received on the project.

The noncollusion affidavit did not originate in statutory law or with the commissioner of highways. It was suggested by the attorney general in 1962 and thereafter adopted by the commissioner. In contracts involving Federal funds, a similar affidavit is required by Federal law from the successful bidder before the contract is signed.[1]

This action was brought by plaintiff on its own behalf and on behalf of all other taxpayers seeking injunctive relief to prevent the awarding of this contract to any but the lowest responsible bidder and by way of mandamus to compel the commissioner of highways to award the contract to it as the lowest responsible bidder. Industrial was permitted to intervene. The trial court granted a temporary injunction on June 21, 1963. Thereafter a motion was made by Industrial for injunctive relief to restrain the commissioner from awarding the contract to Foley. The court denied such temporary in-

---

[1]The Federal statute is 72 Stat. 895, 23 USCA, § 112(c), which reads: "(c) The Secretary shall require as a condition precedent to his approval of each contract awarded by competitive bidding pursuant to subsection (b) of this section, and subject to the provisions of this section, a sworn statement, executed by, or on behalf of, the person, firm, association, or corporation to whom such contract is to be awarded, certifying that such person, firm, association, or corporation has not, either directly or indirectly, entered into any agreement, participated in any collusion, or otherwise taken any action in restraint of free competitive bidding in connection with such contract."

junction. Industrial has appealed from both orders. The commissioners have also appealed. Due to the public interest involved, we advanced the case for an immediate hearing. Inasmuch as our determination of the appeal from the order granting a temporary injunction on the motion of Foley will dispose of the matter, the appeal from the order denying Industrial's motion and the commissioners' appeal will become moot and need not be discussed separately.

The only question involved is whether the failure of Foley to file the noncollusion affidavit required by the specifications prior to the opening of the bids justified the commissioner in rejecting Foley's bid.

The only statutory provision involved is Minn. St. 16.08, which reads:

"All contracts and purchases made by or under the supervision of the commissioner or any state department or agency for which competitive bids are required shall be awarded to the lowest responsible bidder, taking into consideration conformity with the specifications, terms of delivery, and other conditions imposed in the call for bids. The commissioner shall have power to decide as to the lowest responsible bidder for all purchases. As to contracts other than for purchases, the head of the interested department or agency shall make the decision, subject to the approval of the commissioner. Any or all bids may be rejected, and a bid shall be rejected if it contains any alteration or erasure. The commissioner may reject the bid of any bidder who has failed to perform a previous contract with the state. A record shall be kept of all bids, with names of bidders and amounts of bids, and with the successful bid indicated thereon. Such record shall be open to public inspection. In any case where competitive bids are required and where all bids are rejected, new bids shall be called for as in the first instance, unless otherwise expressly provided by law."

Under this statute, public officials charged with the duty of awarding public contracts on competitive bids must award the bid to the lowest responsible bidder. Such officials have some discretion in determining who is the lowest responsible bidder, but in exercising

that discretion their judgment must be based upon some reasonable ground before a low bid can be rejected.[2] Under the statute, the commissioner may reject all bids, but he may not reject a single bid unless there is some substantial reason for it. There is no claim that Foley was not the lowest bidder, nor is there any claim that such bidder was not responsible.

On all matters involving the substance of a competitive bid, such as those which may affect the price, quality or quantity, or the manner of performance, or other things that go into the actual determination of the amount of the bid, there may be no material variation or deviation from the specifications. The requirements of competitive bidding are quite well stated in Coller v. City of St. Paul, 223 Minn. 376, 384, 26 N. W. (2d) 835, 840, where we said:

"Statutory and city charter provisions requiring competitive bidding in the letting of public contracts require, as necessary corollaries, that the public officials whose duty it is to let a contract should adopt definite plans and specifications with respect to the subject matter of the contract; that the plans and specifications be so framed as to permit free and open bidding by all interested parties; that a bid shall constitute a definite offer for the contract which can be accepted without further negotiations; and that the only function of the public authority with respect to bids after they have been received shall be to determine who is the lowest responsible bidder. * * * It necessarily follows also that a bid must conform substantially to the advertised plans and specifications, and that where there is a substantial variance between the bid and the plans and specifications it is the plain duty of the public authority to reject the bid."

It is admitted that the bid of Foley conformed in all respects to the specifications except for the inadvertent omission of the affidavit of noncollusion. It is admitted that a certificate of noncollusion was included in the bid, and it is apparent that this certificate accom-

---

[2]Otter Tail Power Co. v. Village of Elbow Lake, 234 Minn. 419, 49 N. W. (2d) 197, 27 A. L. R. (2d) 906; Duffy v. Village of Princeton, 240 Minn. 9, 60 N. W. (2d) 27.

plished substantially the same thing as the affidavit, except perhaps that the affidavit might subject the bidder to a prosecution for perjury if it were false.

The commissioner argues that an affidavit of this kind submitted with the bid has a greater deterrent effect upon the bidder and will accomplish more by way of eliminating collusion than one filed after the bids are opened, as is required by the Federal statute. There is merit to this argument, and we recognize the importance of maintaining the integrity of competitive bidding, free from any taint of collusion. However, the position that the bid should be rejected because of this inadvertent failure to file the affidavit before the bids were opened comes into conflict with the public policy, declared by statute and long followed in the history of this state, of awarding a public contract of this kind to the lowest responsible bidder. We think that here, where there has been such a complete absence of advantage to Foley or disadvantage to any other bidder by the omission, coupled with the fact that the certificate which was contained in the bid furnished substantial compliance with the purpose of the affidavit, the statutory mandate to award the contract to the lowest responsible bidder must be held to override the slight defect in complying with the requirements of the commissioner. It must be kept in mind that the affidavit required does not have its genesis in the statute but is required only by virtue of the commissioner's request.

The basic purpose of competitive bidding is to give to the public the benefit of the lowest obtainable price from a responsible contractor. As a part of the fulfillment of that purpose, the discretion of public officials is limited or removed so as to avoid fraud, favoritism, improvidence, and extravagance.[3] We have heretofore recognized that the public should not be denied the benefit of the lowest bidder for every minor technical defect that does not affect the substance of the bid. Essentially, the specifications must be so drawn as to give all bidders an equal opportunity without granting an advantage to one or placing others at a disadvantage.

---

[3]Griswold v. County of Ramsey, 242 Minn. 529, 65 N. W. (2d) 647.

In Nielsen v. City of St. Paul, 252 Minn. 12, 88 N. W. (2d) 853, a contractor submitted his bid a short time after the time set by the specifications. We upheld the legality of the contract awarded to such bidder. We quoted with approval from Faist v. Hoboken,[4] 72 N. J. L. 361, 363, 60 A. 1120, 1121:

"Mere irregularity of a bid will not justify its rejection by a municipal body charged with a duty of awarding a contract to the lowest bidder. The form of the bid, not being embodied in the statute, is a regulation prescribed by the city, and failure to technically comply with the form required will not defeat the right of the lowest bidder to have the contract if, after the bids are opened, it appears there has been a substantial compliance with the requirements and he tenders himself ready to execute the requisite contract and furnish responsible bondsmen or good security, as was the fact in this case. The statute is intended to secure to the city the contracting of the work to the lowest responsible bidder, and mere irregularities in the form of the bid, or details of statement which do not in any way mislead or injure, are not sufficient to justify the rejection of such a bid. It is in the interest of the public that the lowest bid, though it be irregular, be accepted, and, if necessary, that the bidder have opportunity to correct an irregularity, while not changing the substance of his bid."

A number of cases from foreign jurisdictions have been called to our attention, most of which involve statutory or charter provisions requiring noncollusion affidavits.[5] These cases are of little help. Our legislature, even though § 16.08 was amended as recently as the 1963 session, has not seen fit to include a noncollusion affidavit in the statutory requirements.[6]

Much of appellants' briefs are devoted to a discussion of the court's power to review an administrative act based on the exercise

---

[4]This case was followed in the later case of Bryan Const. Co. v. Board of Trustees etc. of Montclair, 31 N. J. Super. 200, 106 A. (2d) 303.

[5]See, for instance, Butters v. City of Oakland, 53 Cal. App. 294, 200 P. 354, affirmed, 263 U. S. 162, 44 S. Ct. 62, 68 L. ed. 228.

[6]See, L. 1963, c. 400.

of a discretionary power. All that need be said here is that the courts do have power to review administrative acts in order to determine whether they are arbitrary, unreasonable, capricious, or based on an erroneous view of the law. In this case a refusal of the commissioner to consider the bid of Foley is, we think, based on an erroneous view of the law. Failure to recognize the paramount statutory mandate requiring the contract to be awarded to the lowest possible bidder as overriding a harmless and inadvertent failure to observe administrative requirements that did not affect the substance of the bid, after the main purpose of the requirement had been complied with, makes the refusal an unreasonable act even though it must be admitted here that the commissioner has acted in complete good faith. We therefore hold that the trial court correctly determined that the act of the commissioner was unreasonable and unlawful and that the bid of Foley should be considered in spite of the minor defect. Nothing we say here will prevent the commissioner from rejecting all bids.

The decision of the trial court granting a temporary injunction is therefore affirmed. The decision of the trial court denying a temporary injunction on the application of Industrial is also affirmed.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.