STATE of Alaska, Acting By and Through its agency, the DEPARTMENT OF ADMINISTRATION, Division of General Services and Supply, Appellant,

v.

BOWERS OFFICE PRODUCTS, INC., Appellee.

No. 4792.

Supreme Court of Alaska.

Dec. 12, 1980.

Thomas R. Wickwire, Asst. Atty. Gen., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Jerry Bowers, in pro. per., Fairbanks, for appellee.

OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

CONNOR, Justice.

This case challenges administrative action of the State of Alaska taken in connection with bidding upon a state office supply contract. There are two issues before us: first, whether using regular mail to send an amendment to an invitation for bids is a proper procedure for notifying known bidders; and second, whether the bid in this case was rendered nonresponsive by failure to return an amendment. We hold that the method of sending amendments used by the State was reasonably calculated to effect delivery in time for known bidders to respond to the amendment. We also hold that judicial review of agency actions in

this case should extend only to whether there was a reasonable basis for the agency to decide that the bid in question was non-responsive.

The State sent out invitations for bids on a one year contract to purchase office supplies. The invitation was amended by the State four times before the time of bid opening. Each of these amendments stated that a signed copy of it had to be returned with the bid.

Bowers Office Products, Inc. (Bowers) submitted a bid accompanied by signed copies of the first three amendments. Bowers did not receive notice of the fourth amendment, which was sent to it by regular mail 11 days before bid opening.

Because Bowers did not return all the amendments, the State rejected Bowers' bid as being nonresponsive to the invitation. Bowers submitted the apparent low bid.

Amendment # 4 to the invitation read as follows:

"AMEND:

1. Change the following paragraph:

(1) 'TERM', change to read: One year from *Contract Commencement Date* with renewal options for the two succeeding years. The renewal options will be exercised via mutual agreement between the State and the vendor(s).

2. Add the following paragraphs:

1.A *CONTRACT AWARD DATE*: Notice of awards shall be published no later than 40 days after the date set for the opening of bids.

1.B *CONTRACT COMMENCEMENT DATE*: The contractor shall state below the date upon which he will commence providing contract services. The commencement date chosen by the contractor shall be no later than 60 days after the date of the notice of awards. If no date is stated by the contractor, then the contract shall commence on the 60th day after the date of the notice of awards.

CONTRACT COMMENCEMENT DATE:_____

A signed copy of this amendment must be received by the Division of General Services & Supply prior to the time set for opening of bids."

Before the invitation was amended as to commencement date, it provided only that upon determination of the low responsible bidder, the award would be made without undue delay.

Bowers challenged the rejection of its bid on two grounds: that the State's actions in mailing the amendments amounted to failure to consider the bid honestly and fairly, and that failure to return the amendment was not so material a defect in the bid as to cause it to be nonresponsive.

The superior court made no finding as to why Bowers did not receive the amendment, but it specifically found no evidence of favoritism or unfair dealing by the State. However, the superior court did find that placing the amendment in the regular mail was insufficient under the circumstances in order to reach known serious, responsible and qualified bidders. The court held that the State should have adopted procedures to insure that each such bidder receive each of the amendments, in order to comply with a duty to consider all bids honestly and fairly.[1]

The superior court also held, as a conclusion of law, that the State had a duty to waive Bowers' failure to acknowledge amendment # 4 as an immaterial defect in the bid. The court found, upon examination of the evidence, that waiver of the defect would not have granted Bowers a preference or have been unfair or prejudicial to the State or to other bidders.

■ We disagree with the superior court's reasoning on both conclusions. The

---

1. The superior court apparently adopts this standard from cases cited by appellee in its pretrial memoranda: *Keco Industries, Inc. v. United States*, 428 F.2d 1233, 1237 (Ct.Cl.1970); *Heyer Products Co. v. United States*, 140 F.Supp. 409, 412 (Ct.Cl.1956). Because we find that there is insufficient evidence in the record to support a finding that the State breached any kind of implied duty to Bowers, we do not consider here exactly what the State's duty should be.

superior court's finding that regular mail service is insufficient to contact qualified bidders is unsupported by the record. Amendment # 4 was sent out 11 days before bid opening day, and Bowers, among others, was a local business. No evidence was presented to show that 11 days is an insufficient amount of time for a local letter to be delivered. Nor was there any showing that regular mail is lost so often as to become an unfair, arbitrary or capricious way to do business. To the extent that items are lost in the mail, this disadvantage affects all potential bidders equally.

Alaska Statute 37.05.230(2) provides that bids for government purchases shall be solicited by newspaper publication and by posting notices; "the department [of Administration] shall also solicit bids by sending notices by mail to all active prospective bidders known to it. . . ." The statute makes no requirement for notice by special delivery, registered or certified mail.

In some cases, regular mail may not be sufficient to contact bidders, or it may be necessary to delay bid opening to allow more time for delivery. In this case, however, we cannot say that the State's procedure for issuing amendments violated any government duty to consider all bids equally and fairly.

The superior court also determined that Bowers' failure to acknowledge amendment # 4 was an immaterial defect in Bowers' bid.[2] The court reached this conclusion by examining evidence adduced at trial concerning the effect of amendment # 4 on contract delivery. From this the court determined that waiver of the defect in Bowers' bid would not have granted Bowers a

preference or have been unfair or prejudicial to the other bidders.[3]

We find the the superior court erred in substituting its judgment for that of the state Department of Administration as to the finding that the bids were nonresponsive. As we stated in *North Slope Borough v. LeResche*, 581 P.2d 1112, 1115 (Alaska 1978):

"It is only where the question is one of law that we will substitute our judgment for that of an administrative agency, and we will only do so then where the question of law does not involve agency expertise. Where, as here, the question is as to the merits of agency action on matters committed to agency discretion, our scope of review is limited to whether the decision was arbitrary, unreasonable or an abuse of discretion." (citations omitted).

In *Kelly v. Zamarello*, 486 P.2d 906 (Alaska 1971), we reversed a superior court decision in which the court had substituted its judgment for that of the agency in determining whether certain bids were non–responsive. The proper judicial inquiry, we held, was whether there was a reasonable basis for the agency's action.[4] Our decision rested on the policies underlying strict enforcement of bidding procedures, and also on the principle that courts should not interfere with the policy decisions which are inherent in establishing criteria to be applied in making awards. *Id.* at 917 n.34. We noted that public policy requires carefully drawn public competitive bidding standards and strict compliance with those standards. *Id.* at 918.

---

2. Because it apparently determined that the defect was immaterial, the court held that the State had a duty to waive the defect and accept the bid. Because we hold that the superior court did not apply the proper standard in determining whether the defect was material, we do not reach the issue of the State's duty to waive.

3. We assume that by this the superior court meant that the defect was immaterial.

4. In *Kelly*, we distinguished those cases where a statutory interpretation or analysis of a legal relationship was the central question, and thus

proper for judicial review. *Id.* at 916. Here, as in *Kelly*, the question is not the proper legal definition of the terms "non–responsive" or "material," but an application of legal concepts to facts, based on the nature of the business being conducted. *See* 4 K. Davis, Administrative Law § 30.05 at 221 (1958).

For a discussion of the reasonable basis standard, see *Pan American Petroleum Corp. v. Shell Oil Co.*, 455 P.2d 12, 21–23 (Alaska 1969), where we adopted it with respect to government awards of oil discovery royalties.

There are similar sound policy reasons in this case why the Department of Administration should strictly enforce the requirement that bidders acknowledge the receipt of all amendments. Here the acknowledgement requirement was clearly noted on the face of the amendments. This generally accepted requirement stems from the premise that the contract which is offered to the successful bidder must be the contract which is offered to all the bidders. Even if a bidder did not receive an amendment, the government cannot accept a bid which does not take all the amendments into account or bid on the contract in its final form. *See* IB J. McBride and I. Wachtel, Government Contracts § 10.100 at 10–341 to 10–342 (1980).[5]

Thus, a decision to strictly enforce bidding procedures will necessarily lead to the rejection of certain bids as nonresponsive.

> "A decision rejecting a bid for nonresponsiveness has application beyond the instant case, going to the integrity of the entire competitive bidding process. In the present case it is not difficult to perceive valid reasons for the rejection of the plaintiff's bid as unresponsive.... We do not pretend to know the precise motivation of the Commissioner in rejecting the plaintiffs' bids ...; it is sufficient for our purposes to note that there are reasonable bases to support such a rejection."

*Kelly v. Zamarello*, 486 P.2d at 917–18. *See also Champion Oil Co., Inc. v. Herbert*, 578 P.2d 961, 964 (Alaska 1978).

Applying this test to the instant case, we find that there is a reasonable basis for rejecting Bowers' bid. The Department of Administration may well believe that allowing an exception would encourage other bidders to bid without acknowledging amendments, giving themselves the chance to perform or refuse as they choose. *See* IB J. McBride and I. Wachtel, Government Contracts § 10.100 at 10–342 (1980). One of the State's witnesses testified that the department felt it would put Bowers in a privileged position relative to the other bidders if it allowed Bowers the chance to reject the contract.[6] The department may also have concluded that failure to agree to a firm date for contract commencement would mean that a bidder would be unable to get a firm quote from suppliers for the time when the contract would begin. Evidence was introduced that the State added Amendment # 4 specifying the commencement date at the request of one of the bidders. At the time the office supply market was experiencing severe price fluctuations and bidders were having trouble getting firm quotes from suppliers.

Furthermore, the amendment put the bidder on notice that performance would have to begin within 60 days of the date of the award. The State produced testimony that bidders had historically had difficulty in acquiring sufficient supplies by contract commencement date, and amendment # 4 made clear when a bidder would be required to have all supplies on hand. The department could well have concluded that a bidder who did not acknowledge the amendment might be unaware of time constraints which would later impede the delivery of office products to the State. The hearing officer found that the amendment was designed to avoid a performance default due to the sensitive market situation. Given these factors, the department had a reasonable basis to determine that the defect in Bowers' bid was material and that the bid was nonresponsive.

Courts are often asked to define what constitutes responsiveness to a bid invitation in a particular case, but

---

5. The risk of non–receipt of an amendment has been placed on the bidder even when the amendment is misaddressed by the administrative agency, so long as the agency is not guilty of arbitrary or capricious behavior. Opinion of the Comptroller General B–192905, 79–1 C.P.D. 63 (January 30, 1979).

6. In *King v. Alaska State Housing Authority*, 512 P.2d 887, 892 (Alaska 1973), we defined a "material" variance from the invitation as one which "gives the bidder a substantial advantage over other bidders and thereby restricts or stifles competition." (citation omitted).

"the answers to these questions may require detailed knowledge of the reasons for and significance of the bid's specifications and of the problems involved in producing the items for which the government proposes the contract. While it may be possible to adduce expert testimony on such technical matters so the judge can make an informed decision, it is less expensive and time–consuming for the court to defer to the greater competence of those who have already considered the case."

Comment, *Government Contract Bid Protests: Judicial Review and the Role of the Court of Claims*, 39 U.Chi.L.Rev. 814, 827 (1972). *See also* 4 K. Davis, Administrative Law § 30.05 at 220–21 (1958). For these reasons, we limit the proper scope of judicial review on this question. The superior court decision is reversed.

REVERSED.

BOOCHEVER, J., not participating.