**CHRIS BERG, INC., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, and M.B. Contracting, Appellees.**

No. S–300.

Supreme Court of Alaska.

March 28, 1984.

Donna C. Willard, Richard J. Willoughby, Willoughby & Willard, Anchorage, for appellant.

Ross A. Kopperud, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee State of Alaska.

Mark A. Sandberg, Camarot, Sandberg & Hunter, Anchorage, for appellee M.B. Contracting.

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

In October 1983, the State of Alaska, Department of Transportation and Public Facilities (DOT/PF), issued an invitation for bids for the construction of an addition to the Anchorage International Airport. On November 2, 1983, Chris Berg, Inc. (Chris Berg) submitted the low bid for the project. All the bids were opened immediately after the deadline and checked by a DOT/PF engineer, Mr. Rhode. The checking process led to the discovery that Chris

Berg had not entered any price information for one line item.

By examining the bid, Rhode determined that the price information for that line item had mistakenly been written one line below. Using the total bid price, which was not mistaken, as well as some elementary mathematics, Rhode was able to discern the nature of the mistake and the intended price for the line item.

Rhode then contacted Chris Berg and asked a representative of the corporation to read him the intended bid for the mistaken portion. The intended bid corresponded to Rhode's interpretation. Accordingly, Rhode stated to the Chris Berg representative that no further documents were necessary and that the bid would be accepted.

On November 15, 1983, the DOT/PF reversed its initial determination to award Chris Berg the project. Chris Berg was informed that its bid was rejected as "nonresponsive" and that correction of the bid was "beyond the flexibility" of the Department.

Chris Berg filed an administrative appeal which was summarily denied. Chris Berg also filed suit in superior court, on November 18, seeking injunctive relief. By memorandum decision dated January 20, 1984, the superior court, Judge Shortell presiding, denied Chris Berg's request for a permanent injunction. This appeal followed. Expedited review was granted by order of February 1, 1984.

 A material variance from a bid specification requires rejection of the bid.[1]

A variance is material if it gives the bidder a substantial advantage over other bidders and thereby restricts or stifles competition.[2] Under this standard, the bid variance in the present case does not compel rejection since Chris Berg did not and could not gain any competitive advantage as a result of it.

 The determination by a public agency of the responsiveness of a bid is within the agency's discretion, subject, on judicial review, to an ascertainment that there was a reasonable basis for the agency's action.[3] In the instant case, we conclude that even if the DOT/PF's rejection of Chris Berg's bid is interpreted as an exercise of such discretion, the rejection was an abuse of that discretion and invalid. A minor technical defect or irregularity which does not and could not affect the substance of a low bid in any way does not justify the rejection of that bid on the ground that it is not responsive,[4] when the agency is required by law to award the contract to the "lowest responsible bidder."[5] We believe that the bid error in the present case falls within this category, since the mistake and the bid actually intended are reasonably ascertainable from the invitation to bid and the bid itself, and the mistake was discovered immediately by the agency. Thus, any rejection of Chris Berg's bid on the basis of the bid error would constitute an abuse of discretion as a matter of law.[6]

The decision below is REVERSED and this case is REMANDED to the superior court with direction to remand to the

1. *King v. Alaska State Housing Authority,* 512 P.2d 887, 892 (Alaska 1973).

2. *State v. Bowers Office Products, Inc.,* 621 P.2d 11, 14 n. 6 (Alaska 1980); *King v. Alaska State Housing Authority,* 512 P.2d at 892.

3. *State v. Bowers Office Products, Inc.,* 621 P.2d at 13; *Kelly v. Zamarello,* 486 P.2d 906, 917–18 (Alaska 1971).

4. *See Otter Tail Power Co. v. Mackichan,* 270 Minn. 262, 133 N.W.2d 511, 519 (1965); *Foley Brothers, Inc. v. Marshall,* 266 Minn. 259, 123 N.W.2d 387, 391 (1963); *Faist v. Mayor of City of Hoboken,* 60 A. 1120, 1121 (N.J.1905); *Centric*

*Corp. v. Barbarossa & Sons, Inc.,* 521 P.2d 874, 877–78 (Wyo.1974).

5. AS 35.15.050. Here, we are not concerned with the separate requirement that the bidder be "responsible." The only issue is whether the bid was "responsive."

6. We note that Chris Berg's bid error would not have enabled it to withdraw its bid, as was the case with the bid variance in *Bowers. See* 10 E. McQuillin, The Law of Municipal Corporations § 29.67, at 383 (3d ed. 1981) (withdrawal requires, among other things, that the mistake be material).

DOT/PF for action consistent with this opinion.

RABINOWITZ, Justice, concurring.

Interpreting Chris Berg's bid involved more than a mere mechanical correction of errors. By submitting a bid which forced DOT/PF to call it for an explanation, Chris Berg arguably gained an advantage over other bidders. If DOT/PF had had a defined policy against accepting bids with mistakes as serious as Chris Berg's, I would conclude that this policy and the decisions based on it were valid. But this case presents the circumstance of an agency which, knowing full well what a bid meant and that accepting the bid would save the taxpayers money, made a questionable, post-hoc policy decision to reject the bid. Because this decision was fundamentally unfair to Chris Berg, I agree with the result the Court reaches.

When he opened the bids, Mr. Rhode discovered a blank line in Chris Berg's bid for Additive Alternate No. 2 and several other entries which did not seem to correspond to the bid specifications. Summarized, the relevant portions of the bid read as follows:

| ITEM # | QUANTITY | ITEM NAME | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 20.07 | 5,628 | (Backfill) | 10.00 | 56,280 |
| 20.09 | 900 | (Type IV Backfill) | 4.35 | 3,915 |
| 20.11 | 8,253 | (Bedding Material) | 3.00 | 24,759 |
| 20.13 | 900 | (Surplus Material) | 2.00 | 1,800 |
| 60.02a | 6,433 | (8″ Water Main) | 30.00 | 192,990 |
| 60.02b | 1,820 | (16″ Water Main) | 48.00 | 87,360 |
| 60.03a | 18 | (8″ Valve) | | |
| 60.03b | 4 | (16″ Valve) | 860.00 | 15,480 |
| 60.04a | 14 | (Single Hydrant) | 2,100.00 | 8,400 |
| 60.04b | 3 | (Double Hydrant) | 3,200.00 | 44,800 |
| 550C | 2,750 | (Polymeric Fabric) | 1.10 | 3,025 |
| TOTAL ADDITIVE ALTERNATE No. 2: | | | | $449,759 |

The nature of Chris Berg's error seems obvious. The figures which should have been entered on line 60.03a were in fact entered on line 60.03b. Numbers intended for 60.03b appear on 60.04a. Entries on line 60.04b correspond to those intended for 60.04a. The bid for item 60.04b is missing. If it is assumed that the total for Additive Alternate No. 2 was correct, one needs no more than what the Court correctly calls "elementary mathematics" to determine the missing figures.

Yet Rhode could not and did not rely on this assumption. After he decided what the errors most probably were, he believed it necessary to call Chris Berg in order to determine how Chris Berg had intended to bid. A stipulation between the parties establishes that Rhode made two phone calls. His second call, to Chris Berg's Seattle office, confirmed his interpretation of the erroneous figures and allowed him to assure Chris Berg that its bid would be accepted. If Rhode had known from the four corners of the bid what the bid meant, he would not have asked for the "spread sheets" used to prepare the bid and would not have asked a Chris Berg employee to read him the figures which Chris Berg had intended to submit.

The Court apparently assumes that Chris Berg would not have been able to withdraw its bid in response to Rhode's second phone call. If the total figure which Chris Berg had intended to bid had in fact been different from the figure its bid contained, I think the mistake would have been material, giving Chris Berg an opportunity to withdraw. When Rhode opened the bid, it was impossible to be sure that this total figure was correct. His phone call thus gave Chris Berg an option unavailable to more meticulous bidders. Under the circumstances DOT/PF might initially have

been justified in rejecting Chris Berg's bid as non-responsive.

On the other hand, once Rhode had confirmed what the bid in fact meant, Chris Berg no longer had this option. At this point the State no longer had a rational basis for declaring the bid non-responsive. One can argue on policy grounds that an agency should not call bidders to confirm possible interpretations of their bids; this procedure gives the agency and a favored bidder a chance to amend the favored bidder's bid and secure awards which might otherwise have gone to another bidder. But, as DOT/PF's own bid specifications show, the agency has given itself discretion to make the kind of inquiry which Rhode made. If it had wanted to put limits on its discretion, it should have done so before Rhode made his calls. Even if a policy against securing post-hoc information from bidders were legally defensible, a question I don't think it necessary to decide, DOT/PF's belated decision to adopt this policy, if indeed this is what it did, was improper. Thus, I agree with the majority that DOT/PF should not have rejected Chris Berg's bid.