ARKANSAS HIGHWAY AND TRANSPORTATION DEPARTMENT; and Arkansas State Highway Commission, Bobby Hopper, Raymond Pritchett, Ron Harrod, Rodney Slater, and L.W. "Bill" Clark *v.* Miles S. ADAMS

89-118                                     775 S.W.2d 904

Supreme Court of Arkansas
Opinion delivered September 18, 1989

*Robert L. Wilson, Charles Johnson,* and *Philip N. Gowen,* for appellant.

*Jack East III,* for appellee.

DAVID NEWBERN, Justice. This is an illegal exaction suit brought by the appellee, Miles S. Adams, a taxpayer, against the appellants, the Arkansas Highway and Transportation Department and the Arkansas State Highway Commission and its members, individually. The appellants will be referred to collectively as AHTD.

Adams claimed AHTD had arbitrarily and capriciously refused to accept the lowest bid on a highway construction project. AHTD contended its actions were not arbitrary and capricious because the bid in question, which was submitted by The Rust Company, Inc., (Rust) was incomplete and not responsive to the bid request. It had not listed either the unit price or the extended price for some items in the bid specifications. The chancellor enjoined AHTD from awarding the contract to any bidder other than Rust. AHTD argues the chancellor erred in concluding it was arbitrary and capricious for AHTD to reject Rust's bid and that such a decision violates the separation of powers doctrine. We. agree with AHTD's contention that its action was not arbitrary and capricious and that, under these circumstances, there was an unwarranted judicial intervention. Therefore, we reverse and dismiss the case on appeal. Adams has cross-appealed from the chancellor's refusal to order that the contract be awarded to Rust. We affirm on cross-appeal.

Rust submitted a bid of $7,854,992.31 on construction of the Fayetteville-Greenland By-pass to be built in Washington County. The next lowest bid was submitted by The Sherwood Construction Co. in the amount of $7,967,244.56. Page 16 of the form bid document contained specifications for seventeen 16-foot steel or aluminum gates and three 12-foot steel or aluminum gates. The form had blanks for inclusion of the unit price for each gate and "extension" blanks for the two classes of gates. According to testimony, "extension" means the bid for the total number of units to be supplied. Rust's bid was blank with respect to both

unit price and extension on those two subsections.

After the bids had been opened and it was determined that Rust's bid was the lowest, it was discovered that no bid had been made by Rust on the gates. Mr. Teague of AHTD called Mr. Rust and told him his company's bid would not be accepted because of the omission. Mr. Rust offered to supply the gates for nothing, as if the bid had been for "0." The offer was rejected.

Rust is an Illinois corporation. Adams is an Arkansas citizen employed by Rust. At the trial, Mr. Rust freely admitted that the reason the bid items in question in his company's bid were left blank was inadvertence. It is clear that Rust did not intend to bid "0." Mr. Teague testified that, while it was important to AHTD to save the taxpayers $112,252.25, he was not sure that was more important than protecting the integrity of AHTD's bid process.

### Arbitrary and capricious

The parties agree that the standard to be applied is whether the action of AHTD was arbitrary and capricious. It is clear that, although Teague testified that to his knowledge no bid containing neither a unit nor extension price had ever been accepted by AHTD, AHTD could do so within its discretion according to AHTD regulations.

Section 102.08 of "Standard Specifications for Highway Construction," published by AHTD, provides in part:

> *Irregular Proposals.* Proposals will be considered irregular and *may* be rejected for the following reasons:
>
> . . .
>
> (d) If the proposal does not contain a unit price for each pay item listed except in the case of authorized alternate pay items. (Emphasis added.)

AHTD had awarded contracts to other low bidders where there were infractions of the specifications, such as filling out the bid in pencil rather than ink or including an extension price but not a unit price. Teague's testimony explained that in those cases the bidder's intention was clear, and the unit and ultimate price could be determined from the bid, whereas in this case it could be determined only by post-bidding negotiations which AHTD had

always avoided in order to protect the integrity of the bidding process.

At first blush it would seem clear that rejection of a bid due to violation of a specification with respect to which the bidder was on published notice cannot be considered arbitrary or capricious. Assuming AHTD's own regulations are rational, the act of following them constitutes a "rational basis" for the decision of AHTD in this case. The "rational basis" test has been the touchstone of our decisions determining whether an administrative agency's action is arbitrary and capricious. *Partlow* v. *Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980); *Woodyard* v. *Arkansas Diversified Ins. Co.*, 268 Ark. 94, 594 S.W.2d 13 (1980). Adams argues, however, that when it comes to spending the state's money, the judiciary must have the final responsibility to determine the issue. While we may agree, that does not change the standard to be applied, *i.e.*, the "arbitrary and capricious" test which Adams agrees is to be applied in this case.

Adams cites cases from other jurisdictions in support of his contention that when the error in a bid is minor the court will require its acceptance. He first cites *J.L. Manta, Inc.* v. *Braun*, 393 N.W.2d 490 (Minn. 1986). There the Minnesota Supreme Court felt compelled to approve rejection of a bid which contained an "alteration" of the figure $4,088.00 to $4,082.00. Under the controlling Minnesota statute, the state agency had no discretion but was required to reject a bid containing an alteration. The court, in *obiter dictum*, stated that if it had been within the agency's discretion to accept the bid, refusal to do so would have been "arbitrary." Unlike this case, the intention of the bidder to bid a certain price for the item in question could be determined from the bid submitted, assuming it was the bidder who wrote the "2" over the "8." It was not a bid with a mistake or an omission.

Also cited is *Chris Berg, Inc.* v. *State*, 680 P.2d 93 (Alaska 1984), which involved a lowest bid in which the bidder had written the price of a particular item on the line just below the line on which it should have been written. The nature of the mistake was clear, and the Alaska Supreme Court held that rejection of it by the Alaska Department of Transportation was an abuse of

discretion because the price "the bid actually intended" to state was reasonably ascertainable. That is not the case here. According to Mr. Rust's testimony, the unit and extension prices for the gates were simply left off by mistake. He testified his company had received prices from suppliers of from $2,000 to $5,000 for the gates. Obviously his bid would not have been "0" but would have been something in excess of $2,000, at least. Unlike the bid in the *Chris Berg, Inc.* case, it was not possible to tell from Rust's bid what its intention was with respect to the gates.

The third case on which Adams relies is *Chick's Construction Co.* v. *Wachusett Reg. High School Dist. School Comm.*, 175 N.E.2d 502 (Mass. 1961). There, the commission awarded the contract to the lowest bidder despite the omission of a unit price for an item. The next lowest bidder asked the court to declare the bid invalid and the acceptance of it improper. The court refused to do so, adopting the reasoning suggested by Adams in this case, that is, that the bid could be ascertained from the total price, and that Rust should be considered to have bid "0" for the contract to supply the gates. The issue in the case was not whether the school district had acted arbitrarily by refusing a bid, but was whether it should have been forced to reject the bid. While the case may suggest there would be a rational basis for accepting such a bid, it presents no authority for the proposition that an agency's rejection of such a bid necessarily lacks a rational basis.

■ In view of (1) AHTD's published specification that it "may" reject a bid which contains no unit price on a specified item, (2) the fact that it was impossible to ascertain the intended price for the gates from the bid submitted, and (3) AHTD's policy of not accepting any bid from which the unit price for a specified item cannot be ascertained, we must agree there was a rational basis for the rejection of Rust's bid. While the item in question here may have been minor in comparison with the overall bid price, AHTD's unwillingness to accept a bid with such an uncertainty and its refusal to consider post-bid negotiations with respect to the bid price in order to protect the integrity of the bidding process are, in our view, not irrational. While the decision may have been a "bad" one from the standpoint of saving the taxpayers money in this particular instance, it may have been a "good" one in that the policy behind it may save the taxpayers

manyfold that which has been lost here because the certainty of the bidding process will be protected and litigation and delay thus avoided in the future. The question to be decided here, however, is not whether the decision was "bad" or "good," but whether it was arbitrary and capricious. We hold it was not.

As our holding that the decision of AHTD was not arbitrary and capricious disposes of the appeal, we need not decide the other issues raised. Our holding on that point also disposes of the cross-appeal.

Reversed and dismissed on appeal; affirmed on cross-appeal.

HICKMAN and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. There are two things on which I agree with the majority: first, the integrity of the bidding process of the Arkansas Highway and Transportation Department (AHTD) must be upheld; second, the appellee's bid was the lowest bid opened by the AHTD. It is my opinion that Rust was the lowest responsible bidder and that the Commission should have awarded the bid to it. The technical error, which was to the disadvantage of the bidder, is so small as to fall within the *de minimis* rule. See *Lawrence County* v. *Townsend*, 202 Ark. 887, 154 S.W.2d 4 (1941). Moreover, I believe the action by the Commission was arbitrary under the circumstances of this case.

Clearly, the AHTD would have saved more than $100,000 by accepting the bid of Rust. The error in the bid was the failure to include either a unit or aggregate price for the 20 cattle gates. This error was on page 16 of the bid invitation. On the bottom of that same page the aggregate bid of $7,484,992.31 appeared. Obviously, Rust did not overlook this page, because the total bid was $7,854,992.31. The page listing the gates is an integral part of the invitation and the bid. The bidder did not obtain an advantage over any other bidder nor was the state disadvantaged in any manner by this technical oversight.

The total bid was for all work listed in the bid invitation, including the cattle gates. The bidder was obligated to do the work for the amount he had bid and for which he was bonded. There is no dispute that Rust was the lowest responsible bidder. The failure to include a specific or aggregate bid on the gates did not alter the fact that the Rust Company would still have been the

lowest bidder even if the price of the gates had been inserted in an amount equal to the highest bid on that unit. It was not necessary, however, for the AHTD to insert any speculative figure because Rust offered to fulfill his bid without making any charge for the omitted gates.

The integrity of the bidding process had already been upheld when these bids were opened. At that time the bids became public knowledge and could not be changed. There was no need to go outside the bid itself to determine its amount or the items included. Rust was bound to perform the contract for his bid of $7,854,922.31.

In *Chick's Const. Co.* v. *Wachusett Regional High School District School Committee*, 175 N.E.2d 502 (Mass. 1961), the Massachusetts Supreme Court found "inconsequential" any "deviation from bid requirements" resulting from a contract failure to make an entry in the bid form concerning the cost of rock excavation as required by statute. The *Chick's* opinion stated:

> Granger's bid was a complete bid for the complete work as specified. It was a bid to do the whole job at a fixed price. Under the terms of the contract awarded pursuant to the bid, Granger became bound to do the complete work as specified, including rock excavation. The bid as submitted is subject to the construction that Granger would do such rock excavation as might be encountered without extra charge therefor. This is the construction which Granger asserts in its brief.

To the same effect, see *Chris Berg, Inc.* v. *State Dept. of Transportation and Public Facilities*, 680 P.2d 93 (Alaska 1984), where the Alaska Supreme Court stated that the failure of the low bidder to enter price information for one line item was not a material variance and that "any rejection of Chris Berg's bid on the basis of the bid error would constitute an abuse of discretion as a matter of law." The *Chris Berg* case went on to hold that a variance may be said to be material "if it gives the bidder a substantial advantage over other bidders and thereby restricts or stifles competition. Under this standard, the bid variance in the present case does not compel rejection since Chris Berg did not and could not gain any competitive advantage as a result of it."

I agree with the majority opinion that this issue must be resolved by determining whether the AHTD had a rational basis for its action. However, I reach a different conclusion. The unsupported recitation of the talismanic phrases "public policy" and "integrity of the bidding process" cannot form the basis for a proper decision in this case. A primary purpose of the bidding process is to obtain the best possible price on behalf of the AHTD and the taxpayer. I realize that $100,000 may not mean much to the AHTD, but when you apply this figure to every major project bid, you reach a substantially higher amount.

I think the Highway Commission was unduly alarmed that its integrity was somehow in question. It cannot fairly be said that the bid could not be understood; after all, it is there in black and white on paper. Since no other bidder could conceivably have been harmed by the silent correction of this minor error, I am persuaded that the Commission acted arbitrarily in rejecting the bid.

In the 1988 edition of *Standard Specifications for Highway Construction*, the AHTD exhibit 12-14-88, paragraph 104.02 states:

> The Commission shall have the right to increase or decrease the extent of the work, to change the location or gradient, or the dimensions of any part of the work, provided that the length of the improvement is not increased or decreased in excess of 25% of the contract length, or that the quantities of work to be done or the materials to be furnished are not increased or decreased in money value in excess of 25% of the total contract. Such changes shall not be considered as a waiver of any conditions of the contract or invalidate any of the provisions thereof. The Contractor shall perform the work as increased or decreased within the qualifying limits named and no allowance will be made for anticipated profits on increases or decreases so incurred.
>
> . . .
>
> Whenever an alteration in character of work involves any substantial change in the nature of the design or in the type of construction which materially increases or decreases the

cost of performance of any contract item, the work shall be performed in accordance with the specifications and as directed but consideration may be given to appropriate adjustment in compensation based on documented evidence of changed cost.

The standard specifications book also states at paragraph 104.03 that:

The Contractor, when directed, shall perform unforeseen work for which there is no quantity in price included in the contract, or where increases or decreases in quantities are made in excess of the amounts set out in subsection 104.02, or whenever it is deemed necessary or desirable to further complete the work as contemplated. Such extra work shall be performed in accordance with the specifications and as directed.

The foregoing provisions are made expressly for such purposes as the subject matter of this lawsuit. After admitting previous deviations through the waiving of similar specifications, the AHTD has apparently now decided it has no discretion in the bidding process. It has, however, discretion to reject any and all bids as stated in the bid invitation. Had there been any real uncertainty about the amount of this bid, it would have been proper for the Commission to reject any and all bids.

The provision in the *Standard Specifications* which should govern the present situation is paragraph 102.08, concerning irregular proposals. This paragraph provides that irregular proposals "*may*" be rejected "(d) if the proposal does not contain a unit price for each pay item listed except in the case of authorized alternate pay items." The AHTD and the majority of this court have changed the plain meaning of the word "may" to "shall."

I fear the result of this case will be more litigation rather than less. Hereafter, if there is the slightest irregularity it will constitute an invitation to file suit and delay the bidding process and the contract work. To eliminate uncertainty, perhaps the department should adopt a policy that any deviation invalidates the bid. However, so long as it retains the discretion to act on bids, it must do so under objective standards which are reasonable and fair.

Perhaps no administrative body in the United States is regarded with greater reverence than the Arkansas State Highway Commission. They need not, therefore, become paranoid about the integrity of the bidding process.

The overreaction of the Commission is understandable, but it is still arbitrary. Apparently the fear underlying the Commission's decision is that lawsuits will proliferate if discretion is exercised. Nevertheless, by human nature, disputes are ever present, and litigation will continue so long as we have lawyers and judges.

In my opinion, Rust was the lowest responsible bidder and should have been awarded the contract — a decision that would have saved the taxpayers of the state more than $100,000.

HICKMAN, J., joins dissent.