VINTAGE CONSTRUCTION, INC., a corporation, Appellant,

v.

STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, and Alaska International Construction, Inc., Appellees.

No. S–490.

Supreme Court of Alaska.

Jan. 31, 1986.

Edward A. Merdes, Fairbanks, and Sam E. Baker, Jr., Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Seattle, for appellant.

Linda L. Walton, Asst. Atty. Gen., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

The State of Alaska, Department of Transportation and Public Facilities, solicited bids for project No. F–064–3(3), involving grading and drainage work on a road from Dexter to Banner near Nome. Bids were opened and Vintage Construction Co. (Vintage) was the apparent low bidder, with a bid of $2,334,904.50. The apparent sixth lowest bidder was Alaska International Construction, Inc. (AIC), which submitted a bid of $2,536,607.

After the opening, State officials more closely examined all of the bids. They discovered a discrepancy in AIC's bid: the "total amount bid" was $249,900 more than the sum of the extended unit prices. The State decided to honor the unit prices and ignore the total amount bid. AIC claims that it intended its bid to be in accordance

with the unit prices rather than the total. However, this intention was not necessarily evident from the bid it submitted. Over Vintage's protest, the State awarded the contract to AIC.[1]

Vintage sued, seeking to set aside the award, and both parties moved for summary judgment. The court granted the State's motion, and dismissed Vintage's claims, indicating its reasons on the record at the end of the hearing on the summary judgment motions. Vintage appeals.

The court noted that no mistake had been made in either the unit price or the extension of the unit bid prices and that an addition error had been made in totalling the extensions of the unit bid prices. The court found that this error gave AIC no competitive advantage. The court also observed that certain standard specifications were applicable and had been properly followed. These specifications are:

Standard Specification 102–1.06:

The bidder shall submit his proposal upon the forms furnished by the Department. The bidder shall specify the unit price in words and figures, for each pay item for which a quantity is given and shall also show the products of the respective unit prices and quantities written in figures in the column provided for that purpose and the total amount of the proposal obtained by adding the amounts of the several items. All the words and figures shall be in ink or typed. In case of a discrepancy between the prices written in words and those written in figures, the prices written in words shall govern.

Standard Specification 103–1.01:

After the proposals are opened and read, they will be compared on the basis of the summation of the products of the approximate quantities shown in the bid schedule by the unit bid prices. The results of such comparisons will be immediately available to the public. In the event of a discrepancy between unit bid prices and extensions, the unit bid price shall govern.

Vintage argues that these do not apply. It notes that there is no discrepancy between the unit prices written in words and unit prices written in figures, and argues that there is no discrepancy between unit prices and extensions. Instead, the mis-

---

1. The contracting officer explained the reasons for this decision in a letter to Vintage as follows:

Form 25D–3 Information to Bidders included in the bid assembly for the referenced project contains the following language:

Under *Preparation of Bids*

(c) "The bidder shall specify a unit price in words and figures, for each item for which a quantity is given and shall also show the products of the respective unit prices and quantities written figures in the column provided for that purpose and the total amount of the proposal obtained by adding the amount of the several items. All the words and figures shall be in ink or typed. *In case of a discrepancy between the prices written in words and those written in figures, the prices written in words shall govern.*"

As you will note the unit prices are written in words, while the total price is written only in figures. The Department of Transportation and Public Facilities uses this format in bids for unit price contracts as is this one. In bids for lump sum contracts, the total is required to be written in words as well as figures.

Under *Receipt and Opening of Bids*

(c) "The Department reserves the right to waive any technicality in bids received when such waiver is in the interest of the State."

The Department of Transportation and Public Facilities has concluded that waiver of the error in addition made by Alaska International Construction, Inc. is in the best interest of the State, as such waiver will result in contract price lower than that otherwise available. The Department of Transportation and Public Facilities does not believe that such waiver results in an unfair competitive advantage to Alaska International Construction. Under no circumstances would the Department of Transportation and Public Facilities have allowed Alaska International Construction, Inc. to adjust its unit prices upwards to the amount of its total and remain eligible for bid award.

Payment of this contract is to be on a unit price basis rather than a lump sum basis in accordance with the proposal and Standard Specifications for Highway Construction, dated 1981.

Under no circumstances would the contract have been awarded to Alaska International Construction, Inc. for an amount greater than the summation of the products of the approximate quantities shown in the bid schedule and the written unit prices contained in their proposal.

take is in the summing up of the extensions and, as such, is not covered by the specifications.

The state's response is that the power to correct extension errors necessarily carries with it the power to correct the total price arrived at by summing the extensions. In this case the error was of less significance than that normally covered by the specifications because only one space in the form, the total, rather than two, the total and the mistaken extended item, had to be corrected. The main point made by the standards, according to the state, is that it is the unit price that controls. This point is especially important in this case because this contract is a unit price contract in which quantities have only been estimated. Thus, the total of the extensions of the unit prices is not the contract price.

■ We agree with the State's argument. The specifications taken together clearly suggest that the total of the extensions of unit prices is to be used for informational and initial comparative purposes only, and that the critical items are the written unit prices.

As the contracting officer stated, in unit price contracts, "the unit prices are written in words, while the total price is written only in figures." By contrast, "[i]n bids for lump sum contracts, the total is required to be written in words as well as figures." The final sentence of Standard Specification 102–1.06 speaks only to discrepancies between prices written in words and figures, not between unit prices written in words and figures. In view of the differences between unit price and lump sum form contracts, the agency's interpretation that this sentence means any discrepancy between prices in words and figures, rather than just unit price discrepancies, is reasonable and should control.[2]

Vintage's other point on appeal is that AIC was given a competitive advantage by the State. If the lowest bidder, other than AIC, had submitted a total bid higher than AIC's total, then AIC might have argued that its mistake was in the unit price of some item, and its extension, and that the total price was its intended bid. Such an argument, if it were to be accepted by the contracting authority, might give AIC the right to withdraw its bid, or to obtain the contract on the basis of its higher bid. Either would result in a competitive advantage over other bidders.

■ To test the argument we must determine the approach which should be taken by a contracting officer faced with such a contention. First, he should determine whether the bidder's claimed actual intent is apparent from the bid as submitted.[3] If the contracting officer is unable to say from the documents submitted that the bidder's intent was apparently to bid the higher figure, no relief should be given and the unit prices bid should control. If the bidder's intent to bid at the higher figure is apparent, the contracting officer must ask a second, but related, question: would it be unconscionable to hold the bidder to his bid using the rule of construction that unit prices control? If the answer to that question is "no," relief will not be afforded.

In *Alaska Int'l Const. Inc. v. Earth Movers of Fairbanks, Inc.*, 697 P.2d 626 (Alaska 1985) we assumed that the bidder intended to make a higher bid than that reflected in a written unit price bid. Nonetheless, we held that performance of the written bid could be required so long as it would not be unconscionable to do so. Whether one party's mistaken intent is or should be known to the other party is a traditional inquiry in determining whether

**2.** *See Alaska Int'l Const. Inc. v. Earth Movers of Fairbanks, Inc.*, 697 P.2d 626, 633 (Alaska 1985): "We conclude that both readings of the specification are reasonably possible and that appropriate deference to the agency requires that its interpretation be given effect."

**3.** That was the case in *Chris Berg, Inc. v. State, Dept. of Transp.*, 680 P.2d 93 (Alaska 1984). We held there that the contracting officer had erred in rejecting a bid as non-responsive where one unit price bid was left blank but the amount intended to be bid for that unit could be determined by subtracting the other unit prices from the total.

a contract is voidable. Restatement (Second) of Contracts § 153(b). We rejected this as a sole determinant in public bid cases, *AIC v. Earth Movers, supra,* but we did not suggest that it was irrelevant. Requiring both apparent intent and unconscionability as a pre-requisite to relief is consistent with the goal of protecting the competitive bidding process from manipulation.

■ Using this approach, it can be seen that no competitive advantage was afforded in this case. The contracting officer could not say from reviewing the bid documents that the total bid figure, rather than the unit prices correctly added, was the bid apparently intended. Thus, there would be no occasion to address the second question of whether it would be unconscionable to hold the bidder to his bid despite his apparent intent.

AFFIRMED.

COMPTON, Justice, with whom BURKE, Justice, joins, concurring.

I agree with the result the court reaches, but do not agree with its reasoning.

At the outset I note that the court neglects to advise its audience which determination it is reviewing, that of the Department of Transportation and Public Facilities (DOT/PF) contracting officer or that of the superior court. Additionally, it does not state what standard of review is being applied to whichever determination it is reviewing. Since the opinion can be read as approval of *de novo* review by the superior court, it is at odds with *Alaska International Construction v. Earth Movers of Fairbanks,* 697 P.2d 626 (Alaska 1985). This will lead to further confusion on a matter already less than clear.[1]

In my view, this is a case in which the bidder's actual intent is apparent from the bid document. Indeed, in neither the Department of Law's letter to Vintage Construction Co. (Vintage) outlining its position, nor in the DOT/PF's letter to Vintage does the state argue to the contrary. Upon discovery of the error in addition, the contracting officer contacted Alaska International Construction, Inc. (AIC) to determine whether the unit prices and their extensions were correct. Upon confirmation of the correctness of these items, the total price was reduced accordingly, as well it should have been without having to contact AIC. However, confirmation is apparently standard procedure, as this procedure was followed in *Chris Berg, Inc. v. State Department of Transportation,* 680 P.2d 93 (Alaska 1984). Indeed, the case at bar is in reality *Chris Berg* dressed in other clothing. The court's inquiry need go no further. Yet to justify the DOT/PF's relentless and indiscriminate use of standard specifications (specs) and its own acceptance thereof, it must.

Having concluded that AIC's intention is not evident from its bid document, the court approves application of standard specs by the DOT/PF and superior court. Vintage argues, correctly I believe, that these specs are not applicable because plainly there is no discrepancy between "the prices written in words and those written in figures."

No one argues that words and figures for a particular unit are discrepant. A review of AIC's Bid Schedule discloses that TWO HUNDRED FIFTY DOLLARS is $250.00, FOUR DOLLARS is $4.00, and so on throughout the unit bid price columns. The products of unit price and quantity are required to be written in *figures,* and the total of those *figures* is the Total Amount Bid. The Total Amount Bid need only be written in *figures,* not in words and figures. There is no discrepancy between words and their corresponding figures; therefore resort to the standard specs is entirely inappropriate. The only error is in totaling the Amount Bid column, an error identifiable from the bid document itself,

1. In my view, correction of a bid is subject to an abuse of discretion standard. *De novo* review of that issue by the superior court would be inappropriate.

and correctable without resort to standard specs or subjective judgment. Plainly the court does not understand the difference between "price" and "amount" within the context of the Bid Schedule and specs.[2]

I agree with the court that no competitive advantage was gained by AIC. AIC's intent can be determined without resort to extrinsic evidence, and DOT/PF did nothing more than effectuate AIC's intent in correcting the bid. If correction rendered performance at the corrected price unconscionable, the appropriate remedy would be for DOT/PF to reject AIC's bid as non-responsive.[3]

In summary, this case is directly controlled by *Chris Berg*. Resort to standard specs is unnecessary. Standard specs should be applied only when there is an ambiguity in the bidder's intent; here the face of the bid document discloses no ambiguity. An obvious error in summation of bid amounts was appropriately corrected, and resort to extrinsic evidence was unnecessary.[4] Approval of resort to standard specs when bidder intent is obvious is in derogation of time honored notions of offer and acceptance. Under such circumstances, it is an abuse of agency discretion to disregard intent and apply standard specifications. *Alaska International Construction v. Earth Movers of Fairbanks*, 697 P.2d at 646–47 (Compton, Justice, dissenting). This court's approval of the practice does little to further the establishment of a sound analytical framework within which these cases should be decided. In this case, the agency's error is harmless.

**2.** Evidence of the court's misunderstanding can be demonstrated by comparing language in DOT/PF's and the Department of Law's letters to Vintage to that in the court's opinion.

The Department of Law told Vintage on February 8, 1984, *inter alia:*

At bid opening Vintage Construction appeared to be low, based on a total of $2,334,904.50. Following bid opening DOT/PF, in the process of reviewing the bids, discovered an error in addition in AIC's bid. Instead of the figure AIC had submitted as the total, the actual total of the unit prices and their extensions, was some $249,900.00 lower. DOT/PF contacted AIC and AIC advised that the unit price and their extensions were correct, and that the only error was in adding up the extended prices. AIC is the low bidder, based upon the unit prices and extentions, and a *correct summation* of the extensions.

(Emphasis added).

In a February 9, 1984, letter to Vintage, DOT/PF said, *inter alia:*

As specified ... all proposals ... were "compared on the basis of the summation of the products of the approximate quantities shown in the bid schedule of the unit bid price." The summation of those products [as corrected by retotalling the Amount Bid column] appear on the certified completion of bids for the referenced project dated January 31, 1984. Based on the summation of these products on the proposal submitted by Alaska International Construction, Inc., their bid [as corrected by retotalling the Amount Bid column] in the amount of $2,286,707.00 is low.

....

Under no circumstances would the contract have been awarded to Alaska International Construction, Inc. for an amount greater than the *summation of the products of the approximate quantities* shown in the bid schedule *and the written unit prices* contained in their proposal.

(Emphasis added).

The court then observes:

The main point made by the standards, according to the state, is that it is the unit price that controls. This point is especially important in this case because this contract is a unit price contract in which quantities have only been estimated. Thus, the total of the extension of the unit prices is not the contract price.

We agree with the state's argument. The specifications taken together clearly suggest that the total of the extensions of unit prices is to be used for informational and initial comparative purposes only, and that the *critical items are the written unit price.*

Opinion at 1215. (Emphasis added).

What *is* critical is that the *summation* of the unit prices as extended (the products of the approximate quantities shown in the bid schedule by the unit bid price) *is correct.*

**3.** If DOT/PF ceased its practice of confirming the correctness of figures and simply effectuated intent or applied standard specs as appropriate under the circumstances, the contractor whose bid was altered would be less likely to obtain any competitive advantage in fact, and other bidders would be less likely to claim competitive disadvantage. The opportunity to "second guess" one's own bid would be virtually eliminated.

**4.** *See* generally P. Shnitzer, Government Contract Bidding, Ch. 20 § C(3) (2d ed. 1982).