JENSEN & REYNOLDS CONSTRUCTION CO., a Washington corporation; and Kenneth Stockholm, an individual, Appellants,

v.

STATE of Alaska, DEPARTMENT OF TRANSPORTATION & PUBLIC FACILITIES, Appellee,

v.

SANDSTROM & SONS, INC., an Alaska corporation, Appellee-Intervenor.

No. S-850.

Supreme Court of Alaska.

April 11, 1986.

---

Arnold R. Hedeen and D.K. "Kirby" Wright, Taylor, Bryan & Hintze, Seattle, Wash., and Kenneth J. Goldman, Birch, Horton, Bittner, Pestinger & Anderson, Anchorage, for appellants.

E. John Athens, Jr., Asst. Atty. Gen., Fairbanks, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Kenneth D. Jensen and Scott H. Finley, Jensen, Harris & Roth, Anchorage, for appellee-intervenor.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

In September of 1984, the State invited bids on a public construction project known as the Maclaren River Bridge and Approaches. At the bid opening, Jensen & Reynolds Construction Co. appeared to be the low bidder with a total bid of $1,327,-261. Sandstrom & Sons, Inc. with a bid of $1,394,900 was second.

After the opening the State more closely examined the bids. This analysis revealed that one of Jensen's unit prices contained a discrepancy. The unit price was written as "Thirty-five Thousand Dollars" but was expressed in numbers as "$3,500.00." Ten was the estimated quantity and the extended price, also expressed in numbers, was thirty-five thousand, indicating that Jensen had multiplied the numerical, rather than the written figure by ten. The bid total reflected that the extended unit price of thirty-five thousand dollars had been used rather than three hundred fifty thousand dollars.[1]

After the bid opening, the State compared the bid proposals with reference to Standard Specifications for Highway Construction Section 103–1.01, 102–1.06 and the Information to Bidders, Form 25D–3, page 2. These provide as follows:

103–1.01 Consideration of Proposals. After the proposals are opened and read, they will be compared on the basis of the summation of the products of the approximate quantities shown in the bid schedule by the unit bid prices. The results of such comparisons will be immediately available to the public. In the event of a discrepancy between the unit bid prices and extensions, the unit bid prices shall govern.

The right is reserved to reject any or all proposals, to waive technicalities or to advertise for new proposals, if in the judgment of the awarding authority the best interest of the Department will be promoted thereby.

102–1.06. Preparation of Proposal. The bidder shall submit his proposal upon the forms furnished by the Department. The bidder shall specify a unit price in words and figures, for each pay item for which a quantity is given and shall also show the products of the respective unit

---

1. The bid item looked like this:

| PAY ITEM NO. | ESTIMATED QUANTITY | PAY ITEM NAME, WITH UNIT BID PRICE OR LUMP SUM PRICE WRITTEN IN WORDS | UNIT BID PRICE OR LUMP SUM PRICE | AMOUNT BID |
| --- | --- | --- | --- | --- |
| 505 (6H) | 10 each | Structural Steel Piles Driven at THIRTY-FIVE THOUSAND AND NO/CENTS PER EACH | $3,500 | $35,000 |

prices and quantities written in figures in the column provided for that purpose and the total amount of the proposal obtained by adding the amounts of the several items. All the words and figures shall be in ink or typed. In case of a descrepancy [sic] between the prices written in words and those written in figures, the prices written in words shall govern.

Form 25D–3, Information to Bidders:
PREPARATION OF BIDS

(c) The bidder shall specify a unit price in words and figures, for each pay item for which a quantity is given and shall also show the products of the respective unit prices and quantities written in figures in the column provided for that purpose and the total amount of the proposal obtained by adding the amounts of the several items. All the words and figures shall be in ink or typed. In case of a discrepancy between the prices written in words and those written in figures, the prices written in words shall govern.

The State strictly applied Standard Specification 102–1.06 and Form 25D–3 and interpreted Jensen's bid price for the unit in question to be $35,000, which increased the extended unit price from $35,000 to $350,000, and raised Jensen's total bid price by $315,000. This made Sandstrom & Sons low bidder.

Jensen sued to enjoin the State's award of the contract to Sandstrom. Trial was held on an expedited basis. The trial court found that the intent of Jensen was to bid $3,500 on a unit price basis and that this intent should have been obvious to the State from the bid itself. The court reasoned:

First, Jensen & Reynolds' handwritten unit price bid on Pay Item No. 505(6H) was far in excess of the DOT/PF's engineers' estimate for the pay item. The DOT/PF itself estimated a per unit cost of $4,000 for Pay Item No. 505(6H) and

an extended price of $40,000. Jensen & Reynolds' handwritten unit price bid exceeded the DOT/PF's engineers' estimate by nearly 900%. Second, Jensen & Reynolds' hand written unit price bid for the pay item was far in excess of other bidders' prices for Pay Item No. 505(6H). The prices of the other bidders for Pay Item No. 505(6H) averaged $4,318.75 and varied from a low of $2,450 to a high of $7,000 on a unit price basis. Conversely, Jensen & Reynolds' numerical unit price and extended price for the pay item, $3,500 and $35,000 respectively, were in line with both the DOT/PF engineer estimate and the prices submitted by other bidders on the project. Third, Jensen & Reynolds' numerical unit price bid of $3,500 and extended price bid of $35,000 appeared immediately adjacent to the handwritten price of $35,000. Finally, Jensen & Reynolds' total contract price— $1,327,261—could only be reached by utilizing Jensen & Reynold's numerical unit price and extended price bids for Pay Item No. 505(6H).

At the conclusion of the trial, the court held in favor of the State, concluding that the State had a reasonable basis for awarding the contract to Sandstrom. Judgment was entered in accordance with this conclusion, from which Jensen has appealed. We heard the appeal on an expedited basis and reversed the judgment of the trial court. Our order stated:

The judgment is reversed. Appellant Jensen & Reynolds Construction Company was the lowest bidder. The case is remanded to the superior court for consideration and formulation of an appropriate remedy. An opinion will follow.[2]

This opinion explains the reasons for our decision.

We have had occasion in three recent cases to decide controversies concerning public contract bidding. The cases are *Chris Berg, Inc. v. State, Department of*

---

**2.** On remand, the trial court declined to set aside the contract award to Sandstrom in view of the substantial preliminary work on the project that Sandstrom had performed. Jensen was awarded its bid preparation costs and litigation costs and attorney's fees. This aspect of the court's decision is not before us on appeal.

*Transportation,* 680 P.2d 93 (Alaska 1984); *Alaska International Construction, Inc. v. Earth Movers of Fairbanks, Inc.,* 697 P.2d 626 (Alaska 1985); and *Vintage Construction, Inc. v. State of Alaska, Department of Transportation,* 713 P.2d 1213 (Alaska 1986).

The bidder in *Chris Berg* had inadvertently omitted a unit price and unit price extension, although the unit price was capable of determination by subtracting the other unit prices as extended from the total price. The contracting officer rejected the bid as non-responsive. We held that this determination was an abuse of discretion and invalid, noting that "the mistake and the bid actually intended are reasonably ascertainable from the invitation to bid and the bid itself, and the mistake was discovered immediately by the agency." 680 P.2d at 94. We noted also that the contracting officer's action ran counter to the statutory objective of awarding public contracts to the "lowest responsible bidder." *Id.* at 94.[3]

In *Earth Movers,* a numerical bid was $90,491 while the written bid for the same item was $9,491. The contracting officer, relying on the words over numbers rule of construction set out in Section 102–1.06 of the Standard Specifications, considered the bid to be the lower figure. On review we assumed that the bidder intended the higher figure in fact and that this intent could have been determined without resort to extrinsic evidence. 697 P.2d at 631. Nonetheless, we upheld the contracting officer's determination to make the award at the lower figure, noting that requiring performance at the mistaken level was not unconscionable under the facts presented. We held that the agency did not abuse its discretion by applying the words over numbers rule and noted, as we did in *Chris Berg,* the statutory objective of AS 35.15.-

050 which is to award contracts to the "lowest responsible bidder."

In the third case, *Vintage Construction, Inc.,* the total amount bid expressed in numbers was $249,900 more than the sum of the extended unit prices which were expressed in writing. The contracting officer honored the unit prices, relying on the words over numbers rule. We upheld this determination. We assumed in our analysis that the actual intent of the bidder was not evident from the bid submitted. In response to a competing bidder's contention that honoring the unit prices and ignoring the total gave the bidder a competitive advantage, we discussed a situation where a bidder might claim that his mistake was in expressing the lower written unit price rather than the higher total price stated in numbers. We observed that faced with such a claim the contracting officer should ask two questions:

> First, he should determine whether the bidder's claimed actual intent is apparent from the bid as submitted. If the contracting officer is unable to say from the documents submitted that the bidder's intent was apparently to bid the higher figure, no relief should be given and the unit price as bid should control. If the bidder's intent to bid at the higher figure is apparent, the contracting officer must ask a second, but related, question: would it be unconscionable to hold the bidder to his bid using the rule of construction that unit prices control? If the answer to that question is "no," relief will not be afforded.

713 P.2d at 1215–16 (footnote omitted). We noted that requiring both apparent intent and unconscionability as pre-requisites to relief to a bidder who claims he intended a higher bid was consistent with "the goal of protecting the competitive bidding process from manipulation."

---

**3.** The relevant statute is AS 35.15.050. It provides:

> The department shall award the contract to the lowest responsible bidder, or it may reject all bids. If no satisfactory bid is received, the department may readvertise the project. The department shall make the award in compli-

ance with applicable federal law and the regulations promulgated under it, with this title, and in compliance with AS 37.05, and the rules and regulations promulgated under it, where they are not in conflict with this title and federal law.

■ At least three important principles are involved in these cases. They are (1) that the lowest bid price is preferred; (2) that rules of construction which are expressed in specifications should be followed in order to resolve discrepancies; and (3) that the intent of the bidder when it is evident from the face of the bid is significant.

In *Chris Berg*, the lowest price and the apparent intent principles taken together can be seen as determinative. The *Chris Berg* opinion does not mention any rules of construction which conflict with the result reached. In *Earth Movers*, a combination of the lowest price and rule of construction principles was enough to override the apparent intent of the bidder which in that case was in conflict with the first two principles. In *Vintage*, the result was consistent with the lowest price preference and the applicable rule of construction. The intent of the bidder was not evident and had no role in the outcome of the case.

■ In the present case, we have a conjunction of the lowest price and apparent intent principles, which conflict with the applicable rule of construction. It is our view that the best result here is to honor the lowest price and apparent intent principles. In this way the state should benefit by receiving the lowest bid price and neither Jensen nor Sandstrom will be treated unfairly as Jensen's status as low bidder is confirmed by its obvious intent. The only virtue in mechanically applying the words over numbers rule of construction here is simplicity, a benefit which seems clearly outweighed by the public cost and unfairness which would result if the rule were applied.[4]

■ We can determine whether a competitive advantage would result in awarding the contract to Jensen by asking whether Jensen might be able to argue with success that its mistake was in the numerical unit price, rather than the written price, and therefore that it should be able to withdraw its lower bid or obtain the contract on the basis of the higher bid. Such a result would put Jensen in a competitively advantageous position, a position which our cases are unanimous in condemning. *See Alaska International Construction, Inc.*, 697 P.2d at 628–29; *Chris Berg, Inc.*, 680 P.2d at 94; *see also Vintage Construction, Inc.*, 713 P.2d at 1215–16 (assumed). The first determination which a contracting officer faced with such a contention must make is whether the claimed intent is apparent from the bid. *Vintage Construction, Inc.*, 713 P.2d at 1215. In the present case, the apparent intent, as found by the trial court, is that the lower rather than the higher price was meant. Since this is so, the lower bid may not be regarded as voidable. *See Vintage Construction, Inc.*, 713 P.2d at 1215–16.

In view of our resolution of this case on this ground, it is unnecessary to discuss the other contentions made by Jensen.

For these reasons the judgment of the superior court has been REVERSED.

COMPTON, Justice, with whom BURKE, Justice, joins, concurring.

If this court were to follow the notion that similar cases should be similarly decided, then it should affirm the trial court on the basis of *Alaska International Construction v. Earthmovers of Fairbanks*, 697 P.2d 626 (Alaska 1985). Since I dissented in *Earthmovers*, I should be pleased to see the court adopt an analysis which declines to follow *Earthmovers*. Unfortunately, *Earthmovers* is not being rejected, rather it is being disregarded in order to achieve "the best result."

---

**4.** This result is consistent with a decision of the Comptroller General to which we referred in *Earth Movers*, 697 P.2d at 631–32. The decision, B–158962, 45 Comp.Gen. 682 (1966), entailed a bid in words of forty-five million dollars whereas the bid in figures was forty-five thousand dollars. A clause stating that prices written in words would control those written in numbers was part of the bidding specification. The Comptroller General nonetheless ruled that the bid expressed in numbers should be honored: "To hold otherwise would be grossly arbitrary and inconsistent with the bid itself." *Id.* at 684–85.

The court comments on and quotes from *Chris Berg, Inc. v. State, Department of Transportation,* 680 P.2d 93 (Alaska 1984) as follows:

> We held that this determination was an abuse of discretion and invalid, noting that "the mistake and bid actually intended are reasonably ascertainable from the invitation to bid and the bid itself, and the mistake was discoverable immediately by the agency."

Op. at 847. The case at bar fits quite clearly within this framework, and it should not be necessary to say more than that *Chris Berg* controls.[1] However, *Earthmovers* is there for all to see, and thus must be rationalized.

The court remarks that at least three important principles are involved in the construction bidder cases cited:

> They are (1) that the lowest bid price is preferred; (2) that rules of construction which are expressed in specifications should be followed in order to resolve discrepancies; and (3) that the intent of the bidder when it is evident from the face of the bid is significant.

Op. at 848. I agree in the abstract, but I continue to believe that the court has failed to construct a coherent analytical framework based upon these principles.

I submit that the principles applied by the court in fact are as follows: (1) the lowest bid price is paramount; (2) rules of construction such as those expressed in Standard Specifications are followed as long as they, by themselves or in conjunction with other principles, produce the lowest bid. Otherwise, they are to be disregarded; and (3) the intent of the bidder when evident from the face of the bid is significant, as long as it, by itself or in conjunction with other principles, produces the lowest bid. Otherwise, intent is to be disregarded.

In each case, the erring bidder whose bid became or stayed lowest by the application of any principle was awarded the bid. Thus, in practice, achieving the lowest bid price has been paramount in all cases. Rules of construction were applied in *Earthmovers* in spite of the actual intent[2] of the bidder, thereby producing the lowest bid, while they are disregarded in this case in favor of the actual intent of the bidder, which in this instance produces the lowest bid. In *Vintage,* rules of construction were applied to produce the lowest bid in the absence of intent, yet disregarded in *Chris Berg* in deference to the bidder's intent.

As the court correctly notes, AS 35.15.-050 requires that a contract shall be awarded to the lowest responsible bidder. However, this statute does not tell us *how* to determine which bidder is lowest when errors are made in the bidding process. If the sole consideration is to achieve the lowest bid, sealed bids do not serve that end. A public outcry auction at which contracts are awarded to the lowest bidder would better serve this purpose. Yet as noted by the attorney general, avoidance of favoritism and assurance of fair play in dealing with state government and in competing with others for state contracts are also important. 1959 Op. Att'y Gen. No. 27 (Alaska, November 4, 1959).

I recognize that construction bidding cases do not always lend themselves to "black letter" law from the Restatement of Contracts. However, there is no reason to ignore time honored notions of offer and acceptance when they may be applied. Thus, I reiterate my view that when the bidder's intent is not ambiguous, it should be effectuated, regardless of the result. Resort to rules of construction is proper only to resolve ambiguities, again regardless of the result. We should establish an analytical framework within which we can proceed to a predictable result. Trying to

---

**1.** In my view *Vintage Construction v. State, Department of Transportation,* 713 P.2d 1213 (Alaska 1986), was also a *Chris Berg* case.

**2.** The court remarks that in *Earthmovers* it "assumed" that the bidder intended the higher figure. Op. at 847. No assumption was necessary as the higher bid in *Earthmovers* was the admitted, intended bid.

justify a predetermined result leads to inconsistencies in the process and decisions that should not be tolerated. Those directly involved in the bidding process need certainty. They should not be left to wonder what "principles" they should look to on a case by case basis to determine who is the lowest bidder. *Earthmovers* is an aberration which should be overruled.