ASSOCIATED GENERAL,
INC., Appellant,

v.

**LOURIE CONTRACTING, INC., and the
Municipality of Anchorage, Appellees.**

No. S–1697.

Supreme Court of Alaska.

June 19, 1987.

Andrew E. Hoge and David W. Ridenour,
Hoge and Lekisch, Anchorage, for appellant.

James A. Crary, Asst. Mun. Atty., Jerry
Wertzbaugher, Mun. Atty., Anchorage, for
appellees.

Before RABINOWITZ, C.J., and
BURKE, MATTHEWS, COMPTON and
MOORE, JJ.

## OPINION

PER CURIAM.

The judgment is affirmed on the opinion
of the superior court set forth in the appendix.

APPENDIX

IN THE SUPERIOR COURT FOR THE
STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT
ANCHORAGE

No. 3AN–86–8582 Civil

DECISION AND ORDER

(As Amended from Oral Ruling in Court)

On July 9, 1986, pursuant to stipulation
between the parties, a hearing for preliminary injunction was combined with a nonjury trial on the merits of this cause.
Plaintiff seeks (1) a declaratory judgment
that the Municipality of Anchorage's award
of Chester Creek Improvements Project,
Phase I contract, RFP # 84–E–34, Bid
# 86–C38, to Lourie Contracting, Inc. is
null and void; (2) an injunction restraining
the municipality from awarding the Chester Creek Improvement Project Phase I
contract to Lourie Contracting, Inc.; and
(3) an order compelling the municipality to
award the contract to plaintiff Associated
General, Inc.

Pertinent facts were stipulated to by the
parties:

(1) On or about May 10, 1986, the Municipality of Anchorage (hereinafter MOA),
through its purchasing division, issued Request for Proposal # 84–E–34 for the Chester Creek Project Phase I contract.

(2) Five (5) sealed bids were received and
opened by the purchasing office on June
12, 1986.

(3) At the time of the bid opening, the
low bidders for the Chester Creek project
appeared to be:

| | |
|---|---|
| ASSOCIATED GENERAL, INC. | $537,580.00 |
| LOURIE CONTRACTING, INC. | $554,244.15 |

(4) After analyzing the bid documents,
the MOA determined the "corrected" total
bids for the five (5) sealed bids. Under the
MOA's "corrected" bids, ASSOCIATED

GENERAL, INC. (hereinafter Assoc. Gen'l) and LOURIE CONTRACTING, INC. (hereinafter Lourie) remained the two low bidders, but their positions had changed:

| LOURIE CONTRACTING, INC. | $537,994.15 |
| ASSOCIATED GENERAL, INC. | $538,876.00 |

(5) The "corrected" total bid of Lourie resulted from the MOA's application of the "words over figures" rule of construction, section 10.02, art. 2.3 of Municipality of Anchorage Standard Specifications (hereinafter M.A.S.S.).

(6) The "corrected" total bid of Assoc. Gen'l resulted from correction of addition errors.

(7) It is further undisputed and Mr. Lourie, President of Lourie, testified in court that his intent on behalf of his company was that the bid of Lourie was to be $554,244.13 as stated in the figures that he had handwritten and initialed on his "Bid Summary" sheet.

The court finds further that a preponderance of the evidence establishes that:

(8) Mr. Lourie, as president on behalf of Lourie, prepared and signed the bid submitted.

(9) Mr. Lourie, as president on behalf of Lourie, changed the numeric figures on items A7, B13, F18. He crossed out the numeric entry in the "Unit Bid Price" and the "Total Bid Price" columns on items A7, B13 and F18 and initialed each such change made by him. He did not change the number written in words and entered in the "Work Description Unit Bid Price in Words" column.

(10) Mr. Lourie, as president on behalf of Lourie, also changed and initialed the subtotal numeric figures on pages 2, 5, and 17 and the total bid price on page 26 of Lourie's bid

(11) Mr. Lourie admits that he made a mistake when he overlooked changing the words so they would state the same price as the numbers he had changed and initialed.

(12) Mr. Lourie admits that he intended the changed and initialed figures to be the bid prices submitted on behalf of Lourie.

(13) Mr. Lourie admits that he believed that initialing the changed numeric figures would manifest his intent that the changed and initialed figures were the bid prices that his company was submitting.

(14) The bid of Lourie if calculated to include the changed numeric figures would not be the lowest bid submitted on the Chester Creek Project, Phase I. Assoc. Gen'l would be the lowest bidder on the project.

(15) Mr. Lourie admits his company can perform the contract at the price which is determined by accepting the written word prices and rejecting his changed numeric figures. He can perform the contract because his profit margin on the bid was over five percent (5%) and the difference between his written words and his changed numeric figures is less than five percent (5%) of the total bid price.

(16) The MOA Purchasing Office applied the "words over figures" rule of art. 2.3 of M.A.S.S. to conclude that Lourie had submitted the lowest bid.

(17) As originally prepared, Lourie's bid contained no discrepancies between the written word and the numeric figure prices. The discrepancies resulted from the changed numeric figures initialed by Mr. Lourie.

(18) In making changes and initialing them, Lourie was following the M.A.S.S. art. 2.3 requirement that "If erasures or other changes appear on the forms, each such erasure or change must be initialed by the person signing the bid".

(19) The bid submitted by Lourie, on its face without reference to any extrinsic evidence, manifests Lourie's intent that the changed and initialed figures are the amounts, both for unit prices and for total bid price, that Lourie intended to bid on the project:

The only initials on the bid appear beside changed numeric figures.

The changed numeric figures are consistently initialed.

The subtotal numeric figure for each of the schedules A, B & F affected by the changed numeric figures are also consistently changed and initialed by Mr. Lourie.

No changes appear on the bid other than those initialed by Mr. Lourie.

The subtotals for each schedule as well as the total bid price are mathematically correct and consistent only if the changed and initialed numeric figures are used.

The figures which are changed are uniformly and consistently stricken by a line drawn through the original figure.

(20) Assoc. Gen'l is ready and willing to perform the Chester Creek Project, Phase I contract if it receives the final award.

## CONCLUSIONS OF LAW

(1) The standard of review to be applied by this court is abuse of discretion. Therefore, the task before the court is to determine whether the MOA had a reasonable basis for determining that Lourie was low bidder on the Chester Creek Project, Phase I contract.

(2) From recent supreme court cases [1] dealing with controversies concerning public contracting bidding, three (3) principles emerge:

    (a) the lowest bid price is preferred;

    (b) rules of construction expressed in specifications should be followed to resolve discrepancies; and

    (c) intent of the bidder when it is evident from the face of bid is significant.

(3) In each of the four (4) recent Alaska Supreme Court cases relied upon by the parties and the court in this case, the supreme court applied these three principles in order to consistently obtain the result that the lowest bidder was awarded the

contract. This result is necessary as it is one of the primary purposes and policies underlying the public contract bid process.

(4) In reviewing a challenged bid award, the court must conclude that there is a reasonable basis for the MOA's action if the contract is awarded to the lowest bidder as a result of either (1) an application of the rules of construction to resolve discrepancies or (2) a determination of the intent of the bidder from the face of the bid submitted.

(5) In this case, the MOA is going to award the bid to Lourie as the lowest bidder solely by applying the rule of construction which requires the MOA to accept words over figures to resolve any discrepancies between them.

(6) However, the analysis cannot stop merely with a determination that application of the rules of construction results in a reasonable basis for awarding the bid to the lowest bidder because the competitive bidding process is also required to be open and fair in order to protect it from manipulation.

(7) Thus, in order to ascertain whether application of the rules of construction by the MOA to determine the lowest bidder violates the open and fair policy, it must be determined whether (1) enforcement of the contract would be unconscionable,[2] or (2) Lourie gained a competitive advantage as a result of the MOA's action.

(8) Although in *Vintage Construction v. State DOT, supra,* the following analysis is used to determine only unconscionability, it is equally applicable both to the issue of unconscionability and to the issue of competitive advantage. The analysis begins with the issue of whether:

    (a) the bidder's intent is apparent from the bid as submitted.

**1.** *Berg, Inc. v. State,* et al., 680 P.2d 93 (Alaska 1984); *Alaska International Construction, Inc. v. Earth Movers of Fairbanks, Inc.,* 697 P.2d 626 (Alaska 1985); *Vintage Construction v. State,* 713 P.2d 1213 (Alaska 1986); and *Jensen & Reynolds Construction Co. v. State,* 717 P.2d 844 (Alaska 1986).

**2.** The issue of unconscionability of enforcement would appear not to be a necessary part of the

analysis unless the lowest bidder is seeking to withdraw its bid. That it is not necessary in this case is further supported by the requirement under *AIC v. Earth Movers, supra,* to consider unconscionability in order to determine the materiality question raised by the issue of whether the lowest bidder can withdraw his bid and, thus, get a competitive advantage.

If the answer is no, the result reached from applying the three principles discussed above (item 2) should control, and no further analysis is appropriate. If the answer is yes, a second question must be considered which is:

(b) whether awarding the bid to the lowest bidder would either be unconscionable or result in a competitive advantage.

Such an analysis is appropriate because although the goal of the competitive bidding process is to award the contract for a public project to the lowest responsible bidder, it would not be appropriate to accept the lowest bid if it resulted either in an unconscionable contract that the bidder could not reasonably be expected to enter into outside the bidding process or if it resulted in giving the lowest bidder a competitive advantage over other bidders.

As found above, the intent of Lourie is apparent from the face of the document: Lourie intended to bid the higher price as indicated by the initialed and changed numeric figures on items A7, B13, F18 and pages 2, 5, 17 and 26 of its bid. Thus, it is necessary to continue the analysis by determining first if the award to Lourie is unconscionable.

Given the facts in this case, the contract is not unconscionable if Lourie is required to perform. Lourie can perform the contract without hardship to it. The profit margin on the job will simply be reduced somewhat.

The analysis next requires a determination as to whether Lourie would have a competitive advantage if it is awarded the bid in spite of its clear intent to bid a higher price.[3]

In *Jensen & Reynolds v. DOT, supra,* the supreme court's analysis required a determination as to whether the lowest bidder could argue successfully that it should be able to obtain the bid on the basis of its higher price because although higher than its lowest figure, it is still the lowest bid submitted. If so, the lowest bidder would have a competitive advantage. The MOA has a reasonable basis for concluding that this result cannot be obtained in this case because if Lourie's intent to bid a higher price is honored, it is no longer the lowest bidder.

The supreme court has also stated that competitive advantage exists when due to a clerical mistake, the lowest bidder can choose whether to withdraw its bid thereby effectively allowing the lowest bidder to decide whether to perform. In *AIC v. Earth Movers, supra,* the supreme court set out four (4) criteria whereby a bidder could withdraw its bid due to clerical mistake:

(1) Mistake is of such consequence as to render enforcement unconscionable.

(2) Mistake is material. Materiality for this purpose is defined in the *Chris Berg* decision, *supra* as giving a substantial advantage to the lowest bidder and thereby stifling competition.

Criteria #1 and #2 are duplicative of the very analysis required in this case. As discussed above, the facts of this case establish that it is not unconscionable to require Lourie to perform the Chester Creek Project, Phase I contract. Criteria #2 is circular in this case because it requires that competitive advantage be determined by whether there is competitive advantage.

(3) Mistake occurred despite ordinary care by the bidder; and

(4) It is possible to place the other party in the status quo.

Criteria #3 is not supported by the facts of this case because Mr. Lourie admits he simply overlooked changing the words. Criteria #4 exists in this case in that plaintiff established by a preponderance of the evidence that it *is* ready to perform the contract if awarded it. Based upon application of the four criteria to the facts of this case, the conclusion must be that Lourie cannot withdraw its bid and, therefore, pursuant to these four criteria, there is no

---

**3.** As indicated in fn. 2, in this case where the challenge to the bid award is made by another bidder, this second analysis may be the only one necessary because unconscionability is examined in the context of competitive advantage which is the concern of the unsuccessful bidder.

competitive advantage if it is awarded the bid in this case.

No other competitive advantages have been considered by the Alaska Supreme Court nor are any other ones suggested either by the parties or the facts in this case. Therefore, this court must conclude that there is no competitive advantage to Lourie if it is awarded the contract as a result of the MOA's application of the rules of construction to reconcile the discrepancies in the bid Lourie submitted.

In brief summary, there is a reasonable basis for the MOA to award the Chester Creek Project, Phase I contract to Lourie because application of the "words over figures" rule of construction in the M.A.S.S. results in the contract being performed at the lowest responsible bid. Further, awarding the contract to Lourie in spite of its intent (as clearly manifested on the face of its bid) to submit a higher price does not result in a contract that is either unconscionable to enforce or a contract which gives Lourie a competitive advantage in the bidding process. Consequently, there is no abuse of discretion by the MOA in awarding the contract for the Chester Creek Project, Phase I to Lourie on the basis that it is the lowest bidder.

As has been noted in the dissenting opinions of the recent supreme court cases, the role given to the intent of the lowest bidder is troublesome because it is in sharp contrast to the role of intent under ordinary common law contract principles. However, unlike ordinary contract transactions, the bidding process has a specific purpose of securing the lowest responsible price for the performance of public contracts. That purpose, and the process through which it is achieved, compel a different role for intent which is that of safeguarding the fairness of the process itself. In that limited role, intent is significant.

Based upon the above, the plaintiff's motion for injunction is denied and judgment should be entered against plaintiff and in favor of the defendants on the allegations of the complaint in this cause.

DATED at Anchorage, Alaska, this 11th day of July, 1986.

/s/Karen L. Hunt
Karen L. Hunt
Superior Court Judge